1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
   PATRICIA N. SYVERSON (203111)
3  LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
   2325 E. Camelback Road, Suite 300
4  Phoenix, AZ 85016
   eryan@bffb.com
5  psyverson@bffb.com
   lgomez-gray@bffb.com
6  Telephone:   (602) 274-1100

7  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
8  TODD D. CARPENTER (234464)
   600 W. Broadway, Suite 900
9  San Diego, California 92101
   tcarpenter@bffb.com
10 Telephone: (619) 756-6978

11 STEWART M. WELTMAN (*To be admitted Pro Hac Vice*)
   122 S. Michigan Avenue, Suite 1850
12 Chicago, Illinois 60603
   Telephone: 312-427-3600
13 Fax: 312-427-1850
   sweltman@weltmanlawfirm.com
14 (OF COUNSEL LEVIN FISHBEIN SEDRAN & BERMAN)

15 Attorneys for Plaintiff

16            **UNITED STATES DISTRICT COURT**

17            **EASTERN DISTRICT OF CALIFORNIA**

18 AIDA CORRA, On Behalf of Herself and          Case No.:
   All Others Similarly Situated,
19                                               **CLASS ACTION COMPLAINT FOR:**
                Plaintiff,
20                                               1.   VIOLATION OF THE UNFAIR
           v.                                         COMPETITION LAW, Business and
21                                                    Professions Code §17200 *et seq.*;
   ENERGIZER HOLDINGS INC., a               2.   VIOLATION OF THE CONSUMERS
22 Missouri Corporation; PLAYTEX                    LEGAL REMEDIES ACT,
   PRODUCTS, INC, a Delaware                        Civil Code §1750, *et seq.*; and
23 Corporation; SUN                           3.   BREACH OF EXPRESS
   PHARMACEUTICALS, LLC, a                         WARRANTY.
24 Delaware Limited Liability Company,
                                               DEMAND FOR JURY TRIAL
25              Defendants.

26

27

28

Plaintiff Aida Corra brings this action on behalf of herself and all others similarly situated against Defendants Energizer Holdings, Inc., Playtex Products, Inc. and Sun Pharmaceuticals, LLC (collectively "Defendants") and states:

## NATURE OF ACTION

1.      Defendants distribute, market and sell several over-the-counter sunscreen products under their brand name "Banana Boat":  10 products with a SPF of 85, 100 or 110 (the "Banana Boat SPF 85-110 collection" or "the Products")[1] and several products with a SPF of 50 (the "Banana Boat SPF 50 Products").[2] With the notable exception of the SPF value, the Banana Boat SPF 85-110 collection and the Banana Boat SPF 50 Products make virtually identical representations and contain virtually identical active ingredients. The Banana Boat SPF 85-110 collection retails for a premium over comparable lower SPF products, including the Banana Boat SPF 50 Products.

2.      Developed over 30 years, the Sun Protection Factor ("SPF") is the most accepted method for evaluating the photo-protective efficacy of sunscreens, being universally considered as the main information in the labeling of sunscreens.  The SPF value indicates the level of sunburn protection provided by the sunscreen product.  All sunscreens must be tested according to a SPF test procedure.  The test measures the amount of ultraviolet (UV) radiation exposure it takes to cause sunburn when a person is using a sunscreen in comparison to how much UV exposure it takes to cause a sunburn

---

[1] The Banana Boat SPF 85-110 Collection includes: (1) Kids UltraMist® Sunscreen SPF 110 Continuous Clear Spray; (2) Kids UltraMist® Sunscreen SPF 85 Continuous Clear Spray; (3) Ultra Defense® UltraMist® Sunscreen SPF 110 Continuous Clear Spray; (4) Ultra Defense® UltraMist® Sunscreen SPF 85 Continuous Clear Spray; (5) Ultra Defense® Sunscreen SPF 100 Lotion; (6) Sport Performance® UltraMist® Sunscreen SPF 110 Spray; (7) Sport Performance® UltraMist® Sunscreen SPF 85 Spray; (8) Sport Performance® Sunscreen SPF 100 Lotion; (9) Baby SPF 100 Lotion; (10) Kids SPF 100 Lotion. Plaintiff reserves the right to include other products upon completion of discovery.
[2] The Banana Boat SPF 50 Products include, but are not limited to: (1) Kids UltraMist® Sunscreen SPF 50 Continuous Clear Spray; (2) Ultra Defense® UltraMist® Sunscreen SPF 50 Continuous Clear Spray; (3) Ultra Defense® Sunscreen SPF 50 Lotion; (4) Sport Performance® UltraMist® Sunscreen SPF 50 Spray; (5) Sport Performance® Sunscreen SPF 50 Lotion; (6) Baby SPF 50 Lotion; and (7) Kids Free SPF 50 Lotion.

when they do not use a sunscreen. The product is then labeled with the appropriate SPF value indicating the amount of sunburn protection provided by the product. Because SPF values are determined from a test that measures protection against sunburn caused by ultraviolet B (UVB) radiation, SPF values only indicate a sunscreen's UVB protection.

3.     Consumers have become familiar with SPF values because SPF values have appeared on sunscreen product labels for many decades. Consumers have learned to associate higher SPF values with greater sun protection. Consumers reasonably assume, for example, that a product with a SPF of 100 (like Ultra Defense® Sunscreen SPF 100 Lotion) provides twice the UVB protection of a sunscreen product with a SPF of 50 (like Ultra Defense® Sunscreen SPF 50 Lotion). It does not. In fact, none of the sunscreen products in the Banana Boat SPF 85-110 collection provide any additional clinical benefit over the Banana Boat SPF 50 Products. According to the FDA, who has been examining maximum SPF values since 1978, sunscreen products with SPF values over 50 do not provide any increase in clinical benefit over SPF 50 sunscreen products. The FDA's findings are based on, *inter alia*, scientific tests that demonstrate SPF 100 sunscreens block 99 percent of UV rays, while SPF 50 sunscreens block 98 percent – an immaterial difference that provides no additional clinical benefit to consumers against sunburn.

4.     Defendants' SPF 85, 100 and 110 representations (the "superior UVB protection claims") on their Banana Boat SPF 85-110 collection are false, misleading, and reasonably likely to deceive the public. Indeed, the FDA has expressed "concern[ ] that labeling a product with a specific SPF value higher than 50 would be misleading to the consumer." 76 Fed. Reg. 35672, 35674.[3] "[T]he agency is concerned that an average sunscreen consumer may ascribe more to high SPF values than is clinically relevant and that such products may further encourage the use of sunscreens as a safe way to prolong exposure." 65 Fed. Reg. 36319.

---

[3] The FDA has proposed a rule that would cap SPF values at "50+".  76 Fed. Reg. 35672.

5.     Defendants have employed numerous methods to convey their uniform, deceptive superior UVB protection claims to consumers, including advertising inserts, the internet and, importantly, on the Banana Boat SPF 85-110 collection labels where they cannot be missed by consumers.

6.     The only reason a consumer would purchase a Product from the premium priced Banana Boat SPF 85-110 collection instead of less expensive, lower SPF value but otherwise comparable sunscreen products, including the Banana Boat SPF 50 Products, is to obtain a sunscreen product with a proportionally greater sunburn (i.e., UV radiation) protection, which the Banana Boat SPF 85-110 collection does not provide.

7.     As a result of Defendants' superior UVB protection claims, consumers – including Plaintiff and members of the proposed Class – have purchased Products that do not perform as advertised.

8.     Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased Products in the Banana Boat SPF 85-110 collection to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased these Products.  Based on violations of state unfair competition laws and Defendants' breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased Products in the Banana Boat SPF 85-110 collection.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendants.

10.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do conduct business in California.  Defendants have

- 3 -

marketed, promoted, distributed, and sold the Banana Boat SPF 85-110 collection in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

**PARTIES**

12.     Plaintiff Aida Corra resides in Fresno, California.  In or around March 2012, Plaintiff was exposed to and saw Defendants' superior UVB protection claims by reading the Sport Performance® Sunscreen SPF 100 Lotion label.  In reliance on the superior UVB protection claim, Plaintiff purchased Sport Performance® Sunscreen SPF 100 Lotion at a Wal-Mart located at Peach Street and E. Kings Canyon Road in Fresno, California.  She paid approximately $14.00 for the Product.  The Sport Performance® Sunscreen SPF 100 Lotion Plaintiff purchased did not provide proportionally greater sunburn protection as represented.  As a result, Plaintiff suffered injury in fact and lost money.  Had Plaintiff known the truth about Defendants' misrepresentations and omissions, she would not have purchased Sport Performance® Sunscreen SPF 100 Lotion.

13.     Defendant Energizer Holdings Company, Inc. ("Energizer Holdings") is a Missouri corporation headquartered at 533 Maryville University, St. Louis, Missouri 63141.  From its headquarters in St. Louis, Energizer Holdings manufactures, distributes, markets and/or sells the Banana Boat SPF 85-110 collection to consumers nationwide and created the superior UVB protection claims, which it caused to be disseminated to consumers nationwide, including California.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14.    Defendant Playtex Products, Inc. ("Playtex") is a Delaware corporation headquartered at 300 Nyala Farms Road, Westport, Connecticut 06880. Playtex is a subsidiary of Defendant Energizer Holdings. From its headquarters in Westport, Playtex manufactures, distributes, markets and/or sells the Banana Boat SPF 85-110 collection to consumers nationwide and created the superior UVB protection claims, which it caused to be disseminated to consumers nationwide, including California.

15.    Defendant Sun Pharmaceuticals, LLC ("Sun Pharmaceuticals") is a Delaware limited liability company headquartered at 50 South Dupont Highway, Dover, Delaware 19901. Sun Pharmaceuticals is a subsidiary of Defendant Energizer Holdings. From its headquarters in Dover, Sun Pharmaceuticals manufactures, distributes, markets and/or sells the Banana Boat SPF 85-110 collection to consumers nationwide and created the superior UVB protection claims, which it caused to be disseminated to consumers nationwide, including California.

16.    Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

## FACTUAL ALLEGATIONS

### *The Banana Boat SPF 85-110 Collection*

17.    Defendants distribute, market and sell a variety of sun and skincare products. This lawsuit concerns the Banana Boat SPF 85-110 collection, a line of 10 sunscreen products labeled with a SPF of 85 or greater. The Banana Boat SPF 85-110 collection is sold online and at a variety of third-party retailers including Wal-Mart, Target, Walgreens and CVS.

1       18.    Since launching the Banana Boat SPF 85-110 collection, Defendants have

2   consistently conveyed the message to consumers throughout the United States, including

3   California, that the Banana Boat SPF 85-110 collection provides superior UVB protection

4   compared to comparable lower SPF valued products, including the Banana Boat SPF 50

5   Products. They do not. Defendants' superior UVB protection claims are false, misleading

6   and deceptive.

7       19.    There are only two material differences between the Products in the Banana

8   Boat SPF 85-110 collection and the Banana Boat SPF 50 Products: (1) the SPF values;

9   and (2) the price. The Banana Boat SPF 85-110 collection retails for a premium over

10  comparable lower SPF products, including the Banana Boat SPF 50 Products. For

11  example, the Sport Performance® Sunscreen SPF 100 Lotion Plaintiff purchased contains

12  all of the active ingredients and provides the same UVB protection as Sport Performance®

13  Sunscreen SPF 50 Lotion. Yet, the Sport Performance® Sunscreen SPF 100 Lotion

14  Plaintiff bought retails for at least a $1.00 or more over the Sport Performance® Sunscreen

15  SPF 50 Lotion product.

16      20.    A sunscreen's SPF value is calculated by comparing the time needed for a

17  person to burn unprotected with how long it takes for that person to burn wearing

18  sunscreen. So a person who turns red after 20 minutes of unprotected sun exposure is

19  theoretically protected 15 times longer if they adequately apply SPF 15. Importantly, the

20  SPF rating system is non-linear. Also importantly, scientific studies establish that

21  sunscreen products with SPF values over 50 provide no additional clinical benefit to

22  consumers. SPF 100 blocks 99 percent of UV rays, while SPF 50 blocks 98 percent, an

23  immaterial difference that yields no clinical benefit to consumers.

24      21.    To stop the false sense of security high numbered SPF products create in the

25  minds of consumers, in June 2011 the FDA proposed a regulation governing the labeling

26  of sunscreen products that would cap SPF values at "SPF 50+." *See* 76 Fed. Reg. 35672.

27  According to the FDA, there is insufficient data "to establish that products with SPF

28

values higher than 50 provide additional clinical benefit over SPF 50 sunscreen products." *Id.* at 35673. In fact, scientific studies establish that there is no added clinical benefit associated with SPF values over 50. The FDA's proposed SPF 50+ rule harmonizes with other countries, including Australia and the European Union, that have imposed similar SPF labeling restrictions to reduce consumer confusion.

22. Defendants' superior UVB protection claims are designed to take advantage of health conscious consumers seeking protection from the damaging effects of unprotected sun exposure as increasingly expressed by members of the medical community and documented by the media. Each and every consumer who purchases a Product in the SPF 85-110 collection is exposed to the 85, 100 or 110 SPF values, which appear prominently and conspicuously on the front and center of the Product label set-off from the other representations. The front shots of the SPF 85-110 collection labels appear as follows:

| Kids UltraMist® Sunscreen SPF 110 Continuous Clear Spray | Kids UltraMist® Sunscreen SPF 85 Continuous Clear Spray | Ultra Defense® UltraMist® Sunscreen SPF 110 Continuous Clear Spray | Ultra Defense® UltraMist® Sunscreen SPF 85 Continuous Clear Spray |
|---|---|---|---|

   

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 //

28

Ultra Defense® Sunscreen SPF 100 Lotion



Sport Performance® UltraMist® Sunscreen SPF 110 Spray



Sport Performance® UltraMist® Sunscreen SPF 85



Sport Performance® Sunscreen SPF 100 Lotion



Baby SPF 100 Lotion



Kids SPF 100 Lotion



*The Impact of Defendants' Wrongful Conduct*

23.     Despite the scientific evidence that SPF values higher than 50 provide no additional clinical benefit, Defendants continue to claim that the Banana Boat SPF 85-110 collection provides superior UVB protection and sells the Products for a price premium over comparable lower value SPF products, including the Banana Boat SPF 50 Products.

24.     As the distributor of the Banana Boat SPF 85-110 collection, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in their Products, and are in a superior position to learn of the effects – and have learned of the effects – their Products have on consumers.

25.     Specifically, Defendants knew or should have known, but failed to disclose that the Banana Boat SPF 85-110 collection does not provide superior UVB protection compared to less expensive, lower value SPF products, including the Banana Boat SPF 50 Products.

26.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive superior UVB protection claims.  Plaintiff purchased and applied Sport Performance® Sunscreen SPF 100 Lotion during the Class period and in doing so, read and considered the Sport Performance® Sunscreen SPF 100 Lotion label and based her decision to buy and pay a premium for Sport Performance® Sunscreen SPF 100 Lotion on the superior UVB protection claims.  Defendants' superior UVB protection claims were a material factor in influencing Plaintiff's decision to purchase and use Sport Performance® Sunscreen SPF 100 Lotion. Plaintiff would not have purchased Sport Performance® Sunscreen SPF 100 Lotion had she known that the Product does not provide the represented superior UVB protection.

27.     As a result, Plaintiff and the Class members have been damaged by their purchases of the Banana Boat SPF 85-110 collection and have been deceived into purchasing Products that they believed, based on Defendants' representations, provide

superior UVB protection compared to less expensive, comparable lower valued SPF products, including the Banana Boat SPF 50 Products, when, in fact, they do not.

28.     Defendants have reaped enormous profits from their false marketing and sale of the Banana Boat SPF 85-110 collection.

## CLASS DEFINITION AND ALLEGATIONS

29.     Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of California state laws and/or similar laws in other states:

> **Multi-State Class Action**
> All consumers who purchased a Product in the Banana Boat SPF 85-110 collection, within the applicable statute of limitations, in the United States for personal use until the date notice is disseminated.
>
> Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased a Product in the Banana Boat SPF 85-110 collection for the purpose of resale.

30.     In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **California-Only Class Action**
> All California consumers who purchased a Product in the Banana Boat SPF 85-100 collection, within the applicable statute of limitations, for personal use until the date notice is disseminated.
>
> Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased a Product in the Banana Boat SPF 85-110 collection for the purpose of resale.

31.   *Numerosity*.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.   Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Banana Boat SPF 85-110 collection who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

32.   *Existence and Predominance of Common Questions of Law and Fact.* This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)   whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b)   whether Defendants' alleged conduct violates public policy;

(c)   whether the alleged conduct constitutes violations of the laws asserted;

(d)   whether Defendants engaged in false or misleading advertising;

(e)   whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f)   whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

33.   *Typicality*.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendants' deceptive superior UVB protection claims that accompanied each and every Product in the Banana Boat SPF 85-110 collection.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

34.   *Adequacy of Representation*.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in

complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

35. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

36. The Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

37. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

38. Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**COUNT I**

**Violation of Business & Professions Code §17200, *et seq.***

39.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

40.     Plaintiff brings this claim individually and on behalf of the Class.

41.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased a Product from the Banana Boat SPF 85-110 collection in reliance on Defendants' superior UVB protection claims, but did not receive a Product that provides superior UVB protection as compared to less expensive, comparable lower valued SPF products, including the Banana Boat SPF 50 Products.

42.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the superior UVB protection claims (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law.

43.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

44.     Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding the Banana Boat SPF 85-110 collection, and thereby offended an established public policy, and engaged in immoral,

unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

45.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

46.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

47.     Business & Professions Code §17200, et seq. also prohibits any "fraudulent business act or practice."

48.     Defendants' actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

49.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased a Product from the Banana Boat SPF 85-110 collection. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

50.     As a result of their deception, Defendants have been able to reap unjust revenue and profit.

51.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

52.     Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the

- 14 -

members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

### COUNT II
### Violations of the Consumers Legal Remedies Act –
### Civil Code §1750 *et seq.*

53.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the Class.

55.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act") and similar laws in other states. Plaintiff is a "consumer" as defined by California Civil Code §1761(d).  The Products in the SPF 85-110 collection are "goods" within the meaning of the Act.

56.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Banana Boat SPF 85-110 collection:

(5)     Representing that [the Products] have . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

&ast;  &ast;  &ast;

(7)     Representing that [the Products] are of a particular standard, quality or grade . . . if [they are] of another.

&ast;  &ast;  &ast;

(9)     Advertising goods . . . with intent not to sell them as advertised.

&ast;  &ast;  &ast;

(16)     Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

- 15 -

57.     Defendants violated the Act by representing and failing to disclose material facts on the Banana Boat SPF 85-110 collection labeling and packaging and associated advertising, as described above, when they knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they was obligated to disclose.

58.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

59.     Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.  Copies of the letters are attached hereto as Exhibit A.

60.     If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

61.     Defendants' conduct is fraudulent, wanton and malicious.

62.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

**COUNT III**
**Breach of Express Warranty**

63.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the Class.

65.     The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the

bargain and creates an express warranty that the goods shall conform to the promise and to the description.

66. At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

67. As discussed above, Defendants expressly warranted on each and every Product label in the Banana Boat SPF 85-110 collection that the Products provide proportionally greater UVB protection than comparable, lower SPF valued products, including the Banana Boat SPF 50 Products. The superior UVB protection claims made by Defendants are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendants' representations.

68. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

69. Defendants were provided notice of these issues by, *inter alia*, the instant Complaint.

70. Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a Product that provides superior UVB protection as represented.

71. As a result of Defendants' breach of their contract, Plaintiff and the Class have been damaged in the amount of the price of the Products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

1        D.      Awarding injunctive relief as permitted by law or equity, including:

2 enjoining Defendants from continuing the unlawful practices as set forth herein, and

3 directing Defendants to identify, with Court supervision, victims of their conduct and

4 pay them all money they are required to pay;

5        E.      Ordering Defendants to engage in a corrective advertising campaign;

6        F.      Awarding attorneys' fees and costs; and

7        G.      Providing such further relief as may be just and proper.

8 **DEMAND FOR JURY TRIAL**

9 Plaintiff hereby demands a trial of her claims by jury to the extent authorized by

10 law.

11 Dated: October 24, 2012

12                                     BONNETT, FAIRBOURN, FRIEDMAN
                                        & BALINT, P.C.

13

14                                   */s/Patricia N. Syverson*
                                    Elaine A. Ryan

15                                     Patricia N. Syverson
                                    Lindsey M. Gomez-Gray

16                                     2325 E. Camelback Road, Suite 300

17                                     Phoenix, AZ 85016
                                    eryan@bffb.com

18                                     psyverson@bffb.com

19                                     lgomez-gray@bffb.com
                                    Telephone: (602) 274-1100

20

21                                     BONNETT, FAIRBOURN, FRIEDMAN
                                    & BALINT, P.C.

22                                     Todd D. Carpenter
                                    600 W. Broadway, Suite 900

23                                     San Diego, California 92101
                                    tcarpenter@bffb.com

24                                     Telephone: (619) 756-6978

25

26

27

28

Stewart M. Weltman (*Admitted Pro Hac Vice*)
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600
Fax: 312-427-1850
sweltman@weltmanlawfirm.com
(OF COUNSEL LEVIN FISHBEIN SEDRAN & BERMAN)

Attorneys for Plaintiff