1 | LATHAM & WATKINS LLP
    Daniel Scott Schecter (Bar No. 171472)
2 |   daniel.schecter@lw.com
    Michael J. Reiss (Bar No. 275021)
3 |   michael.reiss@lw.com
    355 South Grand Avenue
4 | Los Angeles, California 90071-1560
    Telephone: +1.213.485.1234
5 | Facsimile: +1.213.891.8763

6 | LATHAM & WATKINS LLP
    William Rawson (*pro hac vice*)
7 |   william.rawson@lw.com
    555 Eleventh Street, NW Suite 1000
8 | Washington, D.C. 20004-1304
    Telephone: +1.202.637.2200
9 | Facsimile: +1.202.637.2201

10 | Attorneys for Defendants
    Energizer Holdings, Inc.

11 |

12 | UNITED STATES DISTRICT COURT

13 | EASTERN DISTRICT OF CALIFORNIA

14 |

15 | AIDA CORRAL, On Behalf of Herself and All Others Similarly Situated,

16 | Plaintiff,

17 | v.

18 |

19 | ENERGIZER HOLDINGS INC., a Missouri Corporation; PLAYTEX PRODUCTS, LLC, fka PLAYTEX

20 | PRODUCTS, INC., a Delaware Corporation; SUN

21 | PHARMACEUTICALS, LLC, a Delaware Limited Liability Company,

22 | Defendants.

23 |

CASE NO. 1:12-CV-01736-AWI-SKO

Honorable Judge Anthony W. Ishii

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

<u>Hearing:</u>

Date:     March 11, 2013
Time:    1:30 p.m.
Place:    Courtroom 2, Eighth Floor

Action Filed: October 24, 2012
Amended Complaint Filed: November 26, 2012

24 |
25 |
26 |
27 |
28 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   **TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD**:

2         PLEASE TAKE NOTICE THAT on March 11, 2013, at 1:30 p.m., or as

3   soon thereafter as it may be heard, in Courtroom 2 of this Court, located at 2500

4   Tulare Street, Room 1500, Fresno, California 93721, Defendants Energizer

5   Holdings, Inc., Playtex Products, LLC, and Sun Pharmaceuticals, LLC

6   (collectively, "Defendants") will and hereby do move this court for an order

7   pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) dismissing all of the claims contained

8   in the Amended Complaint filed December 3, 2012.

9         This Motion is brought on the following grounds:

10        1. Final regulations and Guidance for Industry issued by the Food and

11            Drug Administration ("FDA") preclude Plaintiff's claims pursuant to

12            the doctrines of express preemption and conflict preemption.  The

13            doctrine of primary jurisdiction also applies and requires dismissal

14            because Plaintiff's claims require resolution of issues which have

15            been placed within the special competence of the FDA.

16        2. To the extent not preempted, Plaintiff lacks standing to pursue any of

17            the causes of action she asserts in the Amended Complaint, because

18            she fails to allege facts sufficient to show either injury or reliance as

19            to all products alleged in the Amended Complaint – including the nine

20            products she did not purchase, and the sole product she claims to have

21            purchased.

22        3. To the extent not preempted, Plaintiff's express-warranty claims must

23            be dismissed because she fails to show that a warranty even exists,

24            and Plaintiff's claim for money damages under the California

25            Consumer Legal Remedies Act is barred because she failed to comply

26            with pre-filing notice requirements.

27

28

LATHAM&WATKINS⊔ᴾ
ATTORNEYS AT LAW
LOS ANGELES

i

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1      This Motion is based on this Notice of Motion, the attached Memorandum of

2  Points and Authorities, the Request for Judicial Notice, the pleadings and papers

3  on file herein, and such other matters as may be presented to the Court at the time

4  of the hearing.

5  Dated:  January 16, 2013          LATHAM & WATKINS LLP

6                          Daniel Scott Schecter

                           William Rawson

7                           Michael J. Reiss

8

9                        By

10                       Daniel Scott Schecter

                           Attorneys for Defendants

11                       Energizer Holdings, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................1

II.   ALLEGATIONS OF THE COMPLAINT .......................................2

III.  PLAINTIFF'S CLAIMS ARE PRECLUDED IN THEIR
      ENTIRETY BY EXPRESS AND CONFLICT PREEMPTION ..................3

      A.   FDA Regulates Sunscreen Testing And Labeling In
           Accordance With Its Statutory Mandate.............................3

      B.   Plaintiff's Claims Are Expressly Preempted. ......................8

      C.   Conflict Preemption Precludes Plaintiff's Claims..............11

IV.   THE DOCTRINE OF PRIMARY JURISDICTION ALSO
      APPLIES AND REQUIRES DISMISSAL OF PLAINTIFF'S
      CLAIMS ..................................................................................13

      A.   The Primary Jurisdiction Doctrine....................................13

      B.   Plaintiff's Claims Call Upon The Court To Exercise
           Expertise Reserved For FDA. ...........................................15

      C.   Plaintiff's Claims Expose The Regulated Community
           And The Public To Dangers Of Conflicting Regulations.................17

      D.   Plaintiff's Request For Injunctive Relief Confirms The
           Appropriateness Of Applying The Doctrine Of Primary
           Jurisdiction. ....................................................................19

V.    EVEN ABSENT PREEMPTION, PLAINTIFF'S CLAIMS
      FAIL BECAUSE SHE LACKS ARTICLE III STANDING
      AND FAILS TO IDENTIFY ANY EXPRESS WARRANTY ..................20

      A.   Legal Standard For Motions To Dismiss.............................21

      B.   Plaintiff Lacks Article III Standing To Pursue Any Of
           Her Claims.......................................................................22

           1.   Plaintiff Could Not Have Suffered Any Injury In
                Fact From The Unpurchased Products. .....................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

2.      Plaintiff Fails To Plead An Injury In Fact As To The Purchased Product. ........................................... 24

C.      Plaintiff Fails To State A Claim For Breach Of Express Warranty ........................................................ 24

1.      Plaintiff Fails To Plead Facts Sufficient To Support Her Breach-Of-Warranty Claim. ............................... 25

2.      Plaintiff Failed To Provide Proper Notice Of The Alleged Breach. ..................................................... 25

VI.      PLAINTIFF'S CLAIM FOR DAMAGES AND RESTITUTION UNDER THE CLRA MUST BE STRICKEN BECAUSE PLAINTIFF FAILED TO PROVIDE PRE-SUIT NOTICE ........................................................................ 26

VII.      CONCLUSION ......................................................... 27

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

iv

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Access Telecomms v. Sw. Bell Tel. Co.*,
   137 F.3d 605 (8th Cir. 1998) ................................................................15

*Agni v. Wenshall*,
   522 F.3d 279 (2d Cir. 2008) ................................................................13

*Alberta Gas Chems., Ltd. v. Celanese Corp.*,
   650 F.2d 9 (2d Cir. 1981) ................................................................20

*Alpharma, Inc. v. Pennfield Oil Co.*,
   411 F.3d 934 (8th Cir. 2005) ................................................................14

*Alvarado v. Selma Convalescent Hosp.*,
   153 Cal. App. 4th 1292 (Cal. Ct. App. 2007)........................................19

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................21, 24

*B.H. v. Gold Fields Mining Corp.*,
   506 F. Supp. 2d 792 (N.D. Okla. 2007) ................................................14

*Bailey v. Johnson*,
   48 F.3d 965 (6th Cir. 1995) ................................................................13

*Berenguer v. Warner-Lambert Co.*,
   2003 WL 24299241 (Fla. Cir. Ct. 2003) ................................................9

*California Coastal Comm'n v. Granite Rock Co.*,
   480 U.S. 572 (1987)................................................................12

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   No. C 10-010044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan.
   10, 2011)................................................................23

*Carter v. Novartis Consumer Health, Inc.*,
   582 F. Supp. 2d 1271 (C.D. Cal. 2008)........................................8, 10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (Cal. 1999) ................................................................12

*Clark v. Actavis Group hf*,
   567 F. Supp. 2d 711 (D.N.J. 2008)........................................14, 20

*Ctr. for Biological Diversity, Inc. v. FPL Group, Inc.*,
   166 Cal. App. 4th 1349 (Cal. Ct. App. 2008)........................................19

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

v

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

*Davel Commc'n., Inc. v. Qwest Corp.*,
   460 F.3d 1075 (9th Cir. 2006) ....................................................................14, 17

*Davies v. Nat'l Coop.*
   *Refinery Ass'n*, 963 F. Supp. 990 (D. Kan. 1997) ...........................................19

*Dysthe v. Basic Research, L.L.C.*,
   No. CV 09-08013 AG (SSx), 2011 U.S. Dist. LEXIS 137315 (C.D.
   Cal. June 13, 2011) .............................................................................................23

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ...........................................................................21

*Eli Lilly & Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460 (D.N.J. 1998) .......................................................................10

*Far East Conference v. United States*,
   342 U.S. 570 (1952) ............................................................................................13

*Farmers Ins. Exch. v. The Sup. Court of Los Angeles Cnty.*,
   2 Cal. 4th 377 (Cal. 1992) ..................................................................................14

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000) ........................................................................................22, 24

*Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*,
   892 F. Supp. 133 (D.N.M. 1995) ........................................................................17

*Geier v. American Honda Motor Co.*,
   529 U.S. 861 (2000) ............................................................................................12

*Hairston v. South Beach Bev. Co.*,
   No. CV 12-1429-JFW (DTBx), 2012 U.S. Dist. LEXIS 74279 (C.D.
   Cal. May 18, 2012) ..............................................................................................23

*Heller v. Coca-Cola Co.*,
   230 A.D.2d 768 (N.Y. App. Div. 1996) .........................................................16, 17

*In re Human Tissue Products Liability Litigation*,
   488 F. Supp. 2d 430 (D.N.J. 2007) ....................................................................17

*IPCO Safety Corp. v. WorldCom, Inc.*,
   944 F. Supp. 352 (D.N.J. 1996) .........................................................................20

*Israel v. Baxter Laboratories*,
   466 F.2d 272 (D.C. Cir. 1972) ............................................................................15

*Johns v. Bayer Corp.*,
   No. 09-CV-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D.
   Cal. Feb. 9, 2010) ...............................................................................................23

*Jones v. Rath Packing Co.*,
   430 U.S. 519 (1997) ..............................................................................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

*Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co.*,
  109 F.R.D. 12 (D. Neb. 1985) ............................................................. 14

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (Cal. Ct. App. 2002) ..................................... 8, 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 110 (9th Cir. 2009) ........................................................... 21

*Kwikset v. Superior Court*,
  51 Cal. 4th 310 (Cal. 2011) ............................................................. 21

*Landgraf v. USI Films*,
  511 U.S. 244 (1994) ......................................................................... 11

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th
  Cir. 2007) ......................................................................................... 26

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 24

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ......................................................................... 11

*Mills v. Warner-Lambert Co.*,
  581 F. Supp. 2d 772 (2008) ............................................................... 9

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  532 F.2d 412 (5th Cir. 1976) ........................................................... 15

*Mlejnecky v. Olympus Imaging Am. Inc.*,
  No. 2:10-cv-2630, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. April 1,
  2011) ................................................................................................. 23

*Outboard Marine Corp. v. Superior Court*,
  52 Cal. App. 3d 30 (Cal. App. 1975) ............................................... 26

*Physicians Committee for Responsible Medicine v. General Mills, Inc.*,
  No. 05-cv-958 (LMB), 2006 U.S. Dist. LEXIS 87047 (E.D. Va. Nov.
  30, 2006) ........................................................................................... 15

*Pollard v. Saxe & Yolles Dev. Co.*,
  12 Cal. 3d 374 (Cal. 1974) ............................................................... 26

*Pom Wonderful LLC v. The Coca-Cola Co.*,
  679 F.3d 1170 (9th Cir. 2012) ......................................................... 16

*Riegel v. Medtronic*,
  552 U.S. 312 (2008) ........................................................................... 8

*Ries v. Hornell Brewing Co.*,
  No. 10-cv-01139-JF/PSG, 2011 U.S. Dist. LEXIS 36845 (N.D. Cal.
  Apr. 4, 2011) ..................................................................................... 27

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

*San Diego Bldg. Trades Council v. Garmon*,
   359 U.S. 236 (1959)...............................................................................14

*San Luis & Delta-Mendota Water Auth. v. U.S. Dept. of the Interior*,
   No. 22-cv-00952-LJO-GSA, 2012 U.S. Dist. LEXIS 149672 (E.D.
   Cal. Oct. 17, 2012)...............................................................................22

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
   902 F.2d 222 (3d Cir. 1990) ............................................................10, 16

*Schering Corp. v. FDA*,
   51 F.3d 390 (3d Cir. 1995) .................................................................13

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry.*,
   857 F. Supp. 838 (D.N.M. 1994).....................................................14, 19

*Somerset Pharms., Inc. v. Shalala*,
   973 F. Supp. 443 (D. Del. 1997).............................................................13

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .............................................................21

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010).................................................25

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5,
   2009)...............................................................................26

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2001) ............................................................14, 17

*Tomek v. Apple, Inc.*, No. 2:11-cv-02700-MCE-DAD,
   2012 U.S. Dist. LEXIS 96321 (E.D. Cal. July 11, 2012)..............................25

*Turpin v. Merrell Dow Pharms., Inc.*,
   959 F.2d 1349 (6th Cir. 1992) .................................................................16

*United States v. Phila. Nat'l Bank*,
   374 U.S. 321 (1963) ...............................................................................14

*United States v. U.S. Steel Corp.*,
   645 F.2d 1285 (8th Cir. 1981) .............................................................20

*United States v. W. Pac. R. R. Co.*,
   352 U.S. 59 (1956) ............................................................................13, 14

*Vess v. Ciba Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .............................................................21

*Weinberger v. Bentex Pharmaceuticals, Inc.*,
   412 U.S. 645 (1973)..............................................................15, 16, 17, 19

*Weinberger v. Hynson, Westcott & Dunning, Inc.*,
   412 U.S. 609 (1973)...............................................................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

viii

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

*Wyeth v. Levine*,
  555 U.S. 555 (2009)..........................................................................................8

*Zeran v. America Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ..........................................................................11

## STATUTES

21 U.S.C. § 321(g)(1) (2006)..............................................................................4

21 U.S.C. § 337 (2006) ......................................................................................10

21 U.S.C. § 379r (2006).............................................................................7, 8, 10

Bus. & Prof. Code, §17200 et seq. ......................................................................9

Cal. Bus. & Prof. Code § 17204 ........................................................................22

Cal. Civ. Code § 1780(a) ...................................................................................22

Cal. Civ. Code § 1782(a)(1)...............................................................................26

Cal. U. Com. Code, § 2313 ..................................................................................9

## RULES

Fed. R. Civ. P. 9(b) ......................................................................................21, 24

## REGULATIONS

21 C.F.R. § 10.25 (2012) ......................................................................................4

21 C.F.R. § 201.327 (2012) ..............................................................................4, 8

21 C.F.R. pt. 314 (2012) .......................................................................................4

21 C.F.R. pt. 330 (2012) .......................................................................................4

64 Fed. Reg. 27,666 (May 21, 1999) ...................................................................4

66 Fed. Reg. 67,485 (Dec. 31, 2001)....................................................................4

76 Fed. Reg. 35,620 (June 17, 2011)..................................................4, 5, 7, 11, 16

76 Fed. Reg. 35,665 (June 17, 2011).....................................................................6

76 Fed. Reg. 35,672 (proposed June 17, 2011) ......................................5, 6, 16, 18

77 Fed. Reg. 27,591 (May 11, 2012).....................................................................7

77 Fed. Reg. 72,868 (Dec. 6, 2012)......................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ix

1

## OTHER AUTHORITIES

2  Guidance for Industry: Enforcement Policy – OTC Sunscreen Drug
3  Products Marketed Without an Approved Application (June 2011)..................6

Guidance for Industry: Small Entity Compliance Guide (Dec. 2012) ...................6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

## I.      **INTRODUCTION**

Plaintiff Aida Corral's claims fail on numerous procedural and substantive grounds.  At the outset, Plaintiff's claims are barred by the doctrines of express and conflict preemption and primary jurisdiction, due to the Food and Drug Administration's ("FDA") regulation of labeling of sun care products.  The FDA has promulgated a final rule and "Guidance for Industry," which require the very SPF labeling that Plaintiff seeks to challenge in this action.  Indeed, on the sole product at issue – Sport Performance Sunscreen SPF 100 Lotion – (the "Purchased Product") – Plaintiff relies entirely on a ***proposed*** FDA rule and unspecified studies to support a claim that Defendants' SPF numbers, while accurate and displayed as required by FDA, are nonetheless misleading to consumers.

Leaving aside the complete impropriety of relying on proposed FDA rulemaking to support a false advertising claim, the FDA's regulation of this field bars Plaintiff's claims.  Plaintiff essentially asks this Court to enjoin and impose liability on sunscreen product labeling that is expressly required by FDA regulation.  Plaintiff seeks to impose state labeling requirements that are different from and in conflict with FDA labeling requirements.  Plaintiff's claims are thus precluded by the express preemption provision set forth in the Federal Food, Drug and Cosmetic Act (FDCA).  Plaintiff's claims also should be dismissed pursuant to the doctrines of conflict preemption and primary jurisdiction.

Moreover, Plaintiff lacks standing as to the nine products she did not purchase (the "Unpurchased Products").  Plaintiff does not allege to have ever paid for, used, or even seen the Unpurchased Products, let alone relied on any advertising or marketing statements about those products.  Therefore, she could not have – nor does she purport to have – suffered any cognizable injury in connection with those products.  Because Plaintiff lacks Article III standing to pursue claims related to products that she neither purchased nor used, all of Plaintiff's claims pertaining to the Unpurchased Products must be dismissed.  Additionally,

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

1

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   Plaintiff's vague and conclusory statements regarding the one Purchased Product

2   fall well short of satisfying the pleading requirements to establish Article III or

3   statutory standing.

4        Plaintiff's breach-of-express-warranty claims also fail as to all ten products[1]

5   she includes in the Amended Complaint.  Plaintiff does not allege any specific or

6   cognizable warranty terms, as she must to maintain a breach-of-warranty claim.

7   Plaintiff also failed to provide Defendants the requisite notice of her breach-of-

8   warranty claim.  Likewise, Plaintiff failed to comply with pre-filing notice

9   requirements which bar any claim for money damages under the California

10  Consumer Legal Remedies Act.

11       These defects are fatal to Plaintiff's claims, and the Amended Complaint

12  should therefore be dismissed with prejudice.

13  **II.    ALLEGATIONS OF THE COMPLAINT**

14       Plaintiff Aida Corral claims that, "in or around March 2012," she was

15  "exposed to and saw" Defendants' SPF claims by reading the Purchased Product's

16  label.  (Amended Complaint ¶ 12.)  Plaintiff alleges that "[i]n reliance on the

17  superior UVB protection claim," she purchased the Purchased Product "at a Wal-

18  Mart" located in Fresno, California.  (*Id.*)  Plaintiff estimates that she paid

19  "approximately $14.00 for the Product."  (*Id.*)  Plaintiff claims the Purchased

20  Product "did not provide proportionally greater sunburn protection as represented."

21  (*Id.*)  She states that, as a result, she "suffered injury in fact and lost money."  (*Id.*)

22  Plaintiff further claims that, but for Defendants' "misrepresentation," she would

23

24  ────────────────────

[1]  Plaintiff lists the following ten products in the Amended Complaint: (1) Kids
25  UltraMist Sunscreen SPF 110 Continuous Clear Spray; (2) Kids UltraMist
     Sunscreen SPF 85 Continuous Clear Spray; (3) Ultra Defense UltraMist
26  Sunscreen SPF 110 Continuous Clear Spray (4) Ultra Defense UltraMist
     Sunscreen SPF 85 Continuous Clear Spray; (5) Ultra Defense Sunscreen SPF
27  100 Lotion; (6) Sport Performance UltraMist Sunscreen SPF 110 Spray; (7)
     Sport Performance UltraMist Sunscreen SPF 85 Spray; (8) Sport Performance
28  Sunscreen SPF 100 Lotion; (9) Baby SPF 100 Lotion; and (10) Kids SPF 100
     Lotion.  (Amended Complaint ¶ 1 n.1.)

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

2

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    not have bought the Purchased Product. (*Id.*)

2        Plaintiff also alleges that Defendants made similar representations as to nine

3    other products. (*Id.* ¶ 22.)  But Plaintiff does not allege that she ever purchased or

4    suffered injury from those products.

5        Plaintiff does not claim that the SPF numbers on the labels of Defendants'

6    products are false.  Instead, Plaintiff asserts that Defendants' "superior UVB

7    protection claims are false, misleading, and deceptive." (*Id.* ¶ 18.)  Plaintiff relies

8    heavily on FDA's June 2011 *proposed* rule regarding the labeling of sunscreen

9    products, in which FDA entertains capping SPF values at "SPF 50+." (*Id.* ¶ 21.)

10    Plaintiff ignores a final rule promulgated by FDA in June 2011 that requires

11    sunscreen manufacturers to display SPF numbers as determined by FDA-approved

12    methodology, and does not cap SPF values at 50+.  Plaintiff also ignores a

13    Guidance for Industry published by FDA which directs companies to display

14    specific SPF values, consistent with the final rule, until FDA takes action on its

15    current rulemaking proposal.

16        Plaintiff filed her initial complaint on October 24, 2012, asserting claims

17    under California's Unfair Competition Law ("UCL") and Consumer Legal

18    Remedies Act ("CLRA"), as well as for breach of express warranty, all premised

19    on Defendants' allegedly misleading UV protection claims. (ECF No. 1.)  On

20    November 26, 2012, Plaintiff filed an Amended Complaint, asserting the same

21    causes of action and adding a claim for damages under the CLRA. (Amended

22    Complaint ¶ 60.)  Defendants now move to dismiss the Amended Complaint.

23    **III.    PLAINTIFF'S CLAIMS ARE PRECLUDED IN THEIR ENTIRETY**

24    **BY EXPRESS AND CONFLICT PREEMPTION**

25        **A.    FDA Regulates Sunscreen Testing And Labeling In Accordance With Its Statutory Mandate.**

26        It is evident from the face of the Amended Complaint that the sunscreen

27    products at issue in this case are regulated by FDA as over-the-counter (OTC)

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   drugs.  21 U.S.C. § 321(g)(1) (2006).[2]

2        The FDA has "primary jurisdiction" of issues within its statutory mandate.

3   21 C.F.R. § 10.25(b) (2012).  The FDA regulates OTC drugs primarily in one of

4   two ways: by approval of New Drug Applications for individual products, or by

5   promulgation of a final monograph specifying the conditions under which a given

6   category of OTC drugs (e.g., antacids) will be deemed "generally recognized as

7   safe and effective."  See 21 C.F.R. pt. 314 (2012); 21 C.F.R. pt. 330 (2012).

8        FDA promulgated a final monograph for sunscreen products in 1999, but for

9   reasons unrelated to this action, FDA later stayed the effective date of that final

10  monograph.  That stay remains in effect today.  Sunscreen Drug Products For

11  Over-The-Counter Human Use; Final Monograph, 64 Fed. Reg. 27,666 (May 21,

12  1999) (codified at 21 C.F.R. pt. 352) (Request for Judicial Notice, filed

13  concurrently ("RJN") Ex. A); Partial Stay; Final Rule, 66 Fed. Reg. 67,485 (Dec.

14  31, 2001) (RJN Ex. B).  However, on June 17, 2011, FDA issued a Final Rule

15  dictating how a sunscreen product's Sun Protection Factor (SPF) must be

16  determined, and how that information must be reported on the product label.

17  Labeling and Effectiveness Testing, 76 Fed. Reg. 35,620 (June 17, 2011) (codified

18  at 21 C.F.R. § 201.327) (RJN Ex. C).

19       The Final Rule mandates the precise labeling that Plaintiff seeks to prohibit

20  through this action.  The Final Rule requires sunscreen manufacturers to present

21  SPF values in their product labels in 5 unit increments (e.g., 80, 85), exactly as

22  determined by the FDA-mandated test protocols, with no ceiling at 50, as Plaintiff

23  asks this Court to impose.  21 C.F.R. § 201.327(a)(1) (2012).  The Final Rule also

24  identifies claims on sunscreen products that would be false or misleading, or that

25  would otherwise render a sunscreen product misbranded, but specifically omits

26  SPF ratings above 50 as misleading.  Id. at (g); 76 Fed. Reg. at 35,640-41.

27

28  [2] An Appendix of all U.S. Code and Code of Federal Regulations provisions
    discussed herein is attached to this motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    In the preamble to the Final Rule, FDA explained that promulgation of the
2  Final Rule "will help ensure that these currently marketed sunscreen products are
3  appropriately labeled and tested...." *Id.* at 35,621.  FDA stated further, "it is in the
4  best interest of public health to publish this final rule while we work on remaining
5  issues that need to be addressed in order to publish a final monograph.  This
6  labeling will help ensure that these products are not misbranded by providing
7  specific indications, directions, warnings, and other important information to help
8  consumers select and use them appropriately." *Id.*  FDA explained further still:
9  "Although we are not yet codifying these labeling and related effectiveness testing
10  provisions in the monograph regulation, they do embody the agency's current
11  determination on appropriate regulation of these aspects of sunscreens ...." *Id.*
12  Plaintiff's Amended Complaint makes no reference to this Final Rule, which
13  addresses and resolves the very issues raised by the Amended Complaint.

14    On the same day that FDA promulgated the Final Rule, it also published a
15  proposed rule reflecting the agency's continued evaluation of issues pertaining to
16  SPF testing and labeling.  *See* Revised Effectiveness Determination, 76 Fed. Reg.
17  35,672 (proposed June 17, 2011) (RJN Ex. E).  FDA tentatively proposed limiting
18  SPF claims on OTC sunscreen products to 50+.  *Id.* at 35,673.  FDA recognized
19  that higher-SPF sunscreens do reduce the amount of UVB rays that penetrate to the
20  skin, but raised questions about the clinical benefit to consumers, and called on
21  manufacturers to submit additional studies and information.  *Id.* at  35,672, 35,674-
22  75.  FDA recognized that users of sunscreen products are not all alike, that some
23  have greater sensitivity to sun exposure, and some use sunscreen products under
24  conditions that require greater protection.  *Id.* at 35,675.[3]  FDA also recognized
25  that higher SPF values might provide additional needed protection to users who

26  _____

27  [3]   Examples include: individuals who engage in high-exposure activities such as
      high-altitude skiing; those who live in certain geographical locations; and,
28    persons who have a predisposition to developing skin cancer or otherwise have
      greater sensitivity to the sun.  *Id.* at 35,674-75.

1   fail to apply sunscreen as recommended, or fail to reapply as often as

2   recommended. *See id.* at 35,674.  FDA indicated that in any future final rule, the

3   agency might decide to limit labeled SPF to 50+ as proposed, to cap labeled SPF at

4   a higher number, to impose no cap at all, or to require different labels for high-SPF

5   sunscreens. *See id.* at  35,673, 35,675.

6       On the same day that FDA promulgated its Final Rule and published its

7   proposed rule, it issued a third document: "Guidance for Industry: Enforcement

8   Policy – OTC Sunscreen Drug Products Marketed Without an Approved

9   Application."[4]  Draft Guidance for Industry on Enforcement Policy for Over-the-

10  Counter Sunscreen Drug Products Marketed Without an Approved Application;

11  Availability, 76 Fed. Reg. 35,665 (June 17, 2011) (RJN Ex. D); Guidance for

12  Industry: Enforcement Policy – OTC Sunscreen Drug Products Marketed Without

13  an Approved Application (June 2011) (RJN Ex. H).  FDA issued this Guidance for

14  Industry to "clarify expectations for industry" pending promulgation of a final

15  monograph.  76 Fed. Reg. at 35,673.  The Guidance for Industry explains:

16  "Because there is no final OTC sunscreen monograph in effect, certain OTC

17  sunscreen products have been marketed under our enforcement discretion since the

18  OTC monograph process was established.  We intend to continue to exercise

19  enforcement discretion for certain OTC sunscreen products…marketed without

20  approved applications until a final OTC sunscreen monograph becomes effective."

21  Guidance for Industry at 4.  Specifically with respect to SPF labeling, the Guidance

22  for Industry states that FDA will "continue to exercise enforcement discretion for

23  sunscreen products labeled with specific SPF values higher than 50 if those values

24  are determined according to SPF testing as described in … this guidance, until we

25  _____

26  [4]  FDA later issued a guidance for small businesses that reiterated many of the
        policies discussed in the 2011 Guidance for Industry. *See* Compliance
27      Guidance for Small Business Entities on Labeling and Effectiveness Testing;
        Notice of Availability, 77 Fed. Reg. 72,868 (Dec. 6, 2012) (RJN Ex. G);
28      Guidance for Industry: Small Entity Compliance Guide (Dec. 2012) (RJN Ex.
        I).

6                        NOTICE OF MOTION AND MOTION TO DISMISS
                         PLAINTIFF'S AMENDED COMPLAINT
                         (CASE NO. 12-CV-01736-AWI-SKO)

1    issue a final rule based on the 2011 proposed rule." *Id.* at 6.

2        In other words, the FDA Guidance for Industry expressly advises sunscreen

3    manufacturers that no enforcement action will be brought if sunscreen products are

4    tested according to FDA-approved methods and SPF ratings are reported on

5    product labels as determined by that methodology, including SPF ratings above 50.

6    This makes perfect sense, since the Final Rule *requires* sunscreen manufacturers to

7    do exactly that, but the Guidance for Industry made clear that no enforcement

8    action would be taken during the window between promulgation of the Final Rule

9    and its effective date and compliance deadlines.[5]  Plaintiff's Amended Complaint

10   makes no mention of this Guidance for Industry, just as Plaintiff makes no mention

11   of the Final Rule mandating the precise labeling statements that Plaintiff seeks to

12   challenge by asserting state law claims.

13       In addition to FDA's clear articulation of its intent to regulate the labeling of

14   sunscreen products, the FDCA contains an express preemption provision, entitled

15   "National Uniformity for Nonprescription Drugs."  21 U.S.C. § 379r (2006).  No

16   state may establish or continue in effect any requirement that is different from or in

17   addition to an FDA OTC drug regulation that is in effect. *Id.* at (a), (d).  Where, as

18   here, FDA has not published a final monograph but has promulgated a regulation,

19   preemption "shall apply" to any state requirement "that relates to the same subject,

20   but is different from or in addition to, or that is otherwise not identical with" the

21   federal regulation that is in effect. *Id.* at (d).

22       The preemption provision contains an exception for product liability claims.

23   *Id.* at (e).  This provision does not apply to Plaintiff's claims here, because

24   Plaintiff's economic claims are not considered product liability claims under

25   California law. *See Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 790-91

26   _____

27   [5]  The effective date for the Final Rule was June 18, 2012.  76 Fed. Reg. at
     35,620.  FDA delayed the compliance date to December 17, 2012, but
28   maintained the original effective date. Labeling and Effectiveness Testing;
     Delay of Compliance Dates, 77 Fed. Reg. 27,591 (May 11, 2012) (RJN Ex. F).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   (Cal. Ct. App. 2002); *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d

2   1271, 1287 (C.D. Cal. 2008).  The product liability exception, however, eliminates

3   any need in this case to apply a presumption against preemption.  That

4   presumption has been applied to preserve product liability claims where a person

5   has been injured by a federally-approved product.  *See, e.g., Wyeth v. Levine*, 555

6   U.S. 555 (2009) (loss of limb caused by improper administration of IV drug).

7   Here, Congress has preserved such claims, eliminating any need to construe

8   narrowly other elements of the express preemption provision.

9         **B.**    <u>**Plaintiff's Claims Are Expressly Preempted.**</u>

10       Express preemption is present when Congress's intent to preempt state law

11   is "explicitly stated in the statute's language."  *Jones v. Rath Packing Co.*, 430

12   U.S. 519, 525 (1997).  Here, Congress clearly stated that no state may establish or

13   continue in effect any requirement that differs from an FDA regulation that is in

14   effect.  21 U.S.C. § 379r (a), (d).  That is precisely what Plaintiff attempts with her

15   state law claims.  Accordingly, Plaintiff's claims are expressly preempted.

16       The 2011 Final Rule is a regulation in effect that establishes federal

17   requirements for how sunscreen manufacturers are to determine and display SPF

18   values on their product labels.  Plaintiff seeks damages and an injunction under

19   California law, alleging that compliance with these federal requirements is

20   misleading and violates state law.  Plaintiff seeks to impose a different state

21   requirement, one that would prohibit use of SPF values above 50, which FDA

22   currently *requires*.  21 C.F.R. § 201.327(a)(1).  The Supreme Court has held that

23   common-law duties are "requirements" subject to preemption.  *See Riegel v.*

24   *Medtronic*, 552 U.S. 312, 324-25 (2008).  A finding of liability here would

25   establish a California law requirement that not only would be different from

26   federal requirements, but that would prohibit sunscreen manufacturers from

27   complying with federal law.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    Thus, the state law requirement that Plaintiff seeks to impose relates to the

2  same subject matter as the Final Rule, and would be different from the FDA

3  regulation.  This is precisely what the express preemption provision does not

4  allow.  "When a state law claim, however couched, would effectively require a

5  manufacturer to include additional or different information on a federally-approved

6  label, it is preempted." *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th at 795.

7  Because the state law requirement that Plaintiff seeks to establish is "different from

8  or in addition to, or…otherwise not identical with" the labeling requirements of the

9  Final Rule, it is preempted, and Plaintiff's claims for damages and an injunction

10  are barred.

11    In *Kanter*, plaintiffs alleged that defendants had misrepresented the

12  effectiveness of their OTC lice treatment drug products. *Id.* at 788.  Plaintiffs

13  asserted essentially the same state law claims that are asserted here.[6] *Id.*  The court

14  found that the challenged statements on the product labels did "nothing more than

15  express in direct, straightforward, and easily understood language that which is

16  implicit in the mandatory labeling." *Id.* at 797.  Because the FDA final monograph

17  set forth "explicit and detailed federal requirements" regarding labeling content (as

18  the Final Rule does in this case), and plaintiffs' state law claims would have

19  imposed different or contradictory labeling requirements, the Court found that

20  plaintiffs' claims were preempted.[7] *Id.* at 795.

21    Similarly, in *Carter v. Novartis Consumer Health, Inc.*, the Central District

22  of California dismissed state law claims for damages and injunctive relief based on

23

24  [6]  As here, the Plaintiffs in *Kanter* asserted claims for unfair competition (Bus. &
     Prof. Code § 17200 et seq.), violations of the Consumer Legal Remedies Act

25  (Civ. Code § 1750 et seq.), and breach of express warranty (Cal. U. Com. Code
     § 2313). *Id.*

26

27  [7]  In two similar class actions against Warner-Lambert, two different courts held
     that plaintiffs' claims were preempted by section 379r. *Mills v. Warner-*

28  *Lambert Co.*, 581 F. Supp. 2d 772 (E.D. Tex. 2008); *Berenguer v. Warner-*
     *Lambert Co.*, 2003 WL 24299241, at *4 (Fla. Cir. Ct. 2003).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   allegedly misleading statements about the effectiveness of OTC cough and cold

2   medicines. *See Carter v. Novartis Consumer Health*, 582 F. Supp. 2d at 1290.

3   Because the challenged statements were based entirely upon FDA-approved

4   labeling and advertising, the Court found that plaintiffs' claims were preempted.[8]

5   *Id.* at 1284.

6          The outcome here must be the same.  Plaintiff asserts the same claims, and

7   seeks to impose SPF labeling requirements that would be different from federal

8   requirements in FDA's Final Rule.  Plaintiff's claim for injunctive relief seeks to

9   prohibit sunscreen manufacturers from complying with federal requirements.  The

10   claim for money damages (including punitive damages) seeks to punish sunscreen

11   manufacturers for labeling their products in the past, precisely as FDA in its Final

12   Rule and Guidance for Industry has directed them to.  As such, Plaintiff's claims

13   fall squarely within the express preemption provision set forth in section 379r.[9]

14          It is inapposite that Plaintiff purchased her products after the Final Rule was

15   published but before it became legally effective.  The regulation is in effect now,

16   and Plaintiff by her state law claims seeks to establish or to continue in effect a

17   state requirement that would differ from the federal regulation.  Her claims thus are

18   precluded by the plain language of the FDCA's preemption provision.  *See Zeran*

19

20   [8]   The Plaintiffs in *Carter* asserted statutory and common law claims for breach of
       express warranty, false and misleading advertising, and unfair and deceptive
21       business practices. *Id.* at 1277.

22   [9]   Plaintiff does not assert a violation of the FDCA or FDA regulations.  Nor
       could she attempt to pursue such a claim indirectly; there is no private civil
23       right of action to enforce the FDCA. *See* 21 U.S.C. § 337 (2006) (providing
       that "all such proceedings for the enforcement, or to restrain violations, of [the
24       FDCA] shall be by and in the name of the United States.").  Nor may private
       parties circumvent this prohibition by asserting claims under other statutes.
25       *See, e.g., Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 476-77 (D.N.J.
       1998) (dismissing plaintiff's claims based on their "use [of] the Lanham Act as
26       a vehicle for the assertion of violations of the FDCA"); *Sandoz Pharms. Corp.
       v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (noting that "what
27       the FD&C Act and the FTC Act do not create directly, the Lanham Act does not
       create indirectly").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1 | *v. America Online, Inc.*, 129 F.3d 327, 334-35 (4th Cir. 1997) (finding that the

2 | Communications Decency Act preempts claims based on conduct predating its

3 | enactment).

4 |     Considerations of fair notice, reasonable reliance and settled expectations

5 | also compel this result. Plaintiff seeks to establish a new state standard and apply

6 | it retroactively to punish past compliance with federal law and FDA's Guidance

7 | for Industry. "Elementary considerations of fairness dictate that individuals should

8 | have an opportunity to know what the law is and to conform their conduct

9 | accordingly." *Landgraf v. USI Films*, 511 U.S. 244, 265 (1994). Applying the

10 | preemption provision to Plaintiff's damages claim is consistent with the plain

11 | language of that provision, and the only reasonable and fair approach.

12 |    **C.**    **Conflict Preemption Precludes Plaintiff's Claims.**

13 |     Even absent express preemption, Plaintiff's claims are preempted under the

14 | doctrine of conflict preemption, because they stand in direct conflict with the 2011

15 | Final Rule and FDA's Guidance for Industry.

16 |     Conflict preemption applies where "the Federal Government has weighed

17 | the competing interests relevant to the particular requirement in question, reached

18 | an unambiguous conclusion about how those competing considerations should be

19 | resolved in a particular case or set of cases, and implemented that conclusion via a

20 | specific mandate on manufacturers or producers." *Medtronic, Inc. v. Lohr*, 518

21 | U.S. 470, 501 (1996). That is exactly what has happened here. FDA has

22 | determined how SPF values should be determined and what information should be

23 | provided to consumers on product labels, to "ensure that these currently marketed

24 | sunscreen products are appropriately labeled and tested," 76 Fed. Reg. at 35,621,

25 | and Plaintiff seeks to impose a different approach.

26 |     Moreover, state law is subject to conflict preemption "when it is impossible

27 | to comply with both state and federal law, or where the state law stands as an

28 | obstacle to the accomplishment of the full purposes and objectives of Congress."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987)

2    (citations omitted).  That is precisely the case here.  It is not possible to comply

3    with FDA requirements to display specific SPF values above 50 on product labels,

4    and at the same time comply with the state requirement that Plaintiff seeks to

5    establish, which would prohibit displaying SPF values above 50.

6         Where a state requirement would override explicit federal requirements, and

7    contradict FDA's written enforcement policy regarding those requirements, there

8    can be no doubt that the state requirement would stand as an obstacle to federal

9    regulation.  Nor can there be any doubt that such a state requirement would

10   frustrate achievement of federal objectives reflected in FDA's regulation and

11   enforcement policy.  *See, e.g., Geier v. American Honda Motor Co.*, 529 U.S. 861,

12   881 (2000) (concluding that "[b]ecause the rule of law for which petitioners

13   contend would have stood as an obstacle to the accomplishment and execution of

14   the important means-related Federal objectives . . ., it is preempted") (citation

15   omitted).  Here, the state law requirements that Plaintiff seeks to impose would

16   stand as an obstacle to Congress's mandate that FDA regulate OTC drugs and

17   establish national uniform standards.  Plaintiff's claims thus are precluded by the

18   doctrine of conflict preemption, in addition to express preemption.[10]

19

20

21

22

23   ---

[10]  Plaintiff's claims also are precluded under the "safe harbor" doctrine set forth in

24   *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th
     163, 182, 184 (Cal. 1999) ("If the Legislature has permitted certain conduct or

25   considered a situation and concluded no action should lie, courts may not
     override that determination.  When specific legislation provides a 'safe harbor,'

26   plaintiffs may not use the general unfair competition laws to assault that
     harbor.")  Here, Congress has entrusted regulation of OTC drugs to FDA, and

27   FDA has expressly determined that no action should lie for labeling sunscreen
     products with SPF values above 50.  Consistent with *Cel-Tech*, this court

28   should reject Plaintiff's attempt to use general state statutes to override that
     very specific FDA determination.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

12

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

## IV. THE DOCTRINE OF PRIMARY JURISDICTION ALSO APPLIES AND REQUIRES DISMISSAL OF PLAINTIFF'S CLAIMS

### A. The Primary Jurisdiction Doctrine.

As an alternative and independent ground for dismissal, Plaintiff's claims also must be dismissed on the basis of primary jurisdiction.

The doctrine of primary jurisdiction ensures the proper working relationship between federal agencies and courts. *See United States v. W. Pac. R. R. Co.*, 352 U.S. 59, 62 (1956); *Far East Conference v. United States*, 342 U.S. 570, 575 (1952). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *W. Pac. R.R. Co.,* 352 U.S. at 64.

Primary jurisdiction dictates that, "in cases raising issues of facts not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference,* 342 U.S. at 574. "Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Id.* at 574-75.[11]

---

[11] These principles mirror the principle that "FDA is to be accorded deference when it is evaluating scientific data within its technical expertise." *Somerset Pharms., Inc. v. Shalala*, 973 F. Supp. 443, 453 (D. Del. 1997) (citations omitted); *see also Agni v. Wenshall*, 522 F.3d 279, 286 (2d Cir. 2008); *Schering Corp. v. FDA*, 51 F.3d 390, 399 (3d Cir. 1995). Were deference not accorded, "the major advantages of enforcement through the [FDA] would be lost, including expertise, ability to solicit comment from appropriate sources, direct representation of the public interest, and a unitary enforcement policy." *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) (quotation marks omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    The doctrine of primary jurisdiction "is predicated on an attitude of judicial

2 self-restraint, and is applied when the court believes that considerations of policy

3 recommend that the issue be left up to the administrative agency for initial

4 determination." *Farmers Ins. Exch. v. The Sup. Court of Los Angeles Cnty.*, 2 Cal.

5 4th 377, 392 n.10 (Cal. 1992) (citation omitted).  Primary jurisdiction is properly

6 invoked when a case presents a question that "requires expertise or uniformity in

7 administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775,

8 781 (9th Cir. 2001).[12]

9    When deciding whether to apply the doctrine, a court typically considers the

10 following factors: whether it is being called upon to resolve issues that are outside

11 the conventional experience of judges and are more properly reserved for agency

12 experts; whether a court ruling could subject the defendants to conflicting rulings

13 by court and agency; whether the agency is actively addressing the issues; and, the

14 nature of the relief being requested. *See B.H. v. Gold Fields Mining Corp.*, 506 F.

15 Supp. 2d 792, 803 (N.D. Okla. 2007); *accord, e.g. Syntek Semiconductor Co.,* 307

16 F.3d at 781; *Davel Commc'n., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir.

17 2006); *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry.* 857 F. Supp. 838,

18 842-43 (D.N.M. 1994); *Clark v. Actavis Group hf*, 567 F. Supp. 2d 711, 715-19

19 (D.N.J. 2008); *Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D.

20 12, 28 (D. Neb. 1985).[13]

21

22 [12] The doctrine of primary jurisdiction applies even when state law purports to
pursue the same ends as the agency. "Even the States' salutary effort to redress
23 private wrongs or grant compensation for past harm cannot be exerted to
regulate activities that are potentially subject to the exclusive federal regulatory
24 scheme." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247
(1959); *see also United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963)
25 (invoking judicial abstention for "protection of the integrity of a regulatory
scheme"). The doctrine is particularly appropriate where "the enquiry is
26 essentially one of fact and of discretion in technical matters." *W. Pac. R.R.*, 352
U.S. at 66 (quotation marks omitted).

27 [13] Courts also will consider whether application of the doctrine is likely to result
28 in significant delay. *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938
(8th Cir. 2005); *Access Telecomms v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    FDA regulations expressly codify the doctrine of primary jurisdiction, and

2    the doctrine—normally used sparingly by courts—has been applied in numerous

3    cases involving the FDA.  *See* 21 C.F.R. § 10.25(b); *Weinberger v. Bentex*

4    *Pharmaceuticals, Inc.*, 412 U.S. 645, 654 (1973) ("Threshold questions within the

5    peculiar expertise of an administrative agency *are appropriately routed to the*

6    *agency, while the court stays its hand.*") (emphasis added); *Weinberger v. Hynson,*

7    *Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973) ("The heart of the new

8    procedures designed by Congress is the grant of primary jurisdiction to FDA, the

9    expert agency it created."); *Israel v. Baxter Laboratories*, 466 F.2d 272, 280 (D.C.

10   Cir. 1972) (deferring to FDA because the question of whether a drug is safe and

11   effective was "most properly for the FDA."); *Physicians Committee for*

12   *Responsible Medicine v. General Mills, Inc.*, No. 05-cv-958 (LMB), 2006 U.S.

13   Dist. LEXIS 87047, *2, *23-24 (E.D. Va. Nov. 30, 2006) (dismissing misleading

14   advertising claims because FDA was "better suited" to address the scientific issue

15   presented than the court, and there was "clearly a risk of inconsistent judgments").

16   **B.    Plaintiff's Claims Call Upon The Court To Exercise Expertise**
     **Reserved For FDA.**

17

18   Plaintiff asks this Court to address a variety of technical policy issues which

19   unquestionably are outside the conventional experience of judges, and require

20   expertise and regulatory discretion reserved for FDA, such as: (1) whether

21   sunscreen products with SPF values above 50, determined using FDA-approved

22   methodology, provide greater "clinical benefit" to consumers than products with an

23   SPF value of 50 (Amended Complaint ¶ 3); (2) what information pertaining to

24   higher SPF values should be provided to consumers in FDA-approved product

25   labels, *id.*; and (3) whether the answer should be the same for all products and

26   _____

27   Cir. 1998).  That is not a concern here because, as described below, FDA
     already has exercised its primary jurisdiction in the form of the Final Rule.
     "The advisability of invoking primary jurisdiction is greatest when the issue is

28   already before the agency." *Miss. Power & Light Co. v. United Gas Pipe Line*
     *Co.*, 532 F.2d 412, 420 (5th Cir. 1976).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

15

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   consumers, including consumers with particular sensitivity to the sun, those who

2   use sunscreen under circumstances requiring particularly strong protection, and

3   those who might not apply the product as thoroughly or as often as directed

4   (implicit in the attempt to pursue this case as a class action).  Moreover, these are

5   the same questions FDA already has considered in its Final Rule, 76 Fed. Reg. at

6   35,621, 35,624-28, and that FDA has stated it intends to consider further in its

7   Proposed Rule.  76 Fed. Reg. at 35,672-75.  As such, this case presents precisely

8   the circumstances that warrant application of the doctrine of primary jurisdiction.

9        To sustain her claims, Plaintiff must convince this Court to ignore the FDA

10  Final Rule that already is in effect (and the related Guidance for Industry), and to

11  supplant FDA and determine for itself how sunscreen products function when

12  applied by consumers, and how they should be labeled.  Courts are not the proper

13  forum for resolving complex scientific issues and making related regulatory

14  determinations.  "[U]nder our precedent, for a court to act when the FDA has not—

15  despite regulating extensively in this area—would risk undercutting the FDA's

16  expert judgments and authority."  *Pom Wonderful LLC v. The Coca-Cola Co.*, 679

17  F.3d 1170, 1177 (9th Cir. 2012); *see also, e.g., Weinberger*, 412 U.S. at 653-54;

18  *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992) (citing

19  "the difficulty of scientists and hence of judges, lawyers and jurors" in knowing

20  what reasonable inferences to draw from scientific studies); *Sandoz Pharms. Corp.*,

21  902 F.2d at 231-32 (finding that the appropriate labeling of a cough syrup

22  ingredient was "not properly decided as an original matter by a district court").[14]

23  ─────────────────

24  [14] In *Heller v. Coca-Cola Co.*, 230 A.D. 2d 768 (N.Y. App. Div. 1996), plaintiffs
brought a purported class action against soft drink manufacturers alleging fraud
and unjust enrichment, and seeking to compel additional disclosures pertaining

25  to an FDA-approved ingredient. *Id.*  The court of appeals affirmed dismissal of
the case on the basis of the doctrine of primary jurisdiction, recognizing the

26  two-fold reasons for the doctrine as "a need for the expertise and specialized
knowledge of an administrative agency and a need for consistency and

27  uniformity in an industry which is nationally regulated." *Id.* at 769.  Similar to
the case here, FDA had established labeling requirements that did not include

28  the information the plaintiffs wanted.  The court reasoned that application of the
doctrine of primary jurisdiction would "ensure that there will be national

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   Application of the doctrine is especially appropriate here, because FDA in

2   its Final Rule and Guidance for Industry already has decided, for now, precisely

3   the issues Plaintiff would bring to this different forum. "Under the doctrine of

4   'primary jurisdiction,' when an activity is arguably subject to an administrative

5   agency's expertise, such as the FDA, federal courts must defer to the exclusive

6   competence of that agency." *In re Human Tissue Products Liability Litigation*,

7   488 F. Supp. 2d 430, 437 (D.N.J. 2007); *accord Weinberger*, 412 U.S. at 653-54.

8   **C.   Plaintiff's Claims Expose The Regulated Community And The Public To Dangers Of Conflicting Regulations.**

9

10   Courts invoke the doctrine of primary jurisdiction where there is the

11   *possibility* that a court decision could subject regulated entities to conflicting

12   judicial and agency standards. *See Davel Commc'n., Inc.*, 460 F.3d at 1090 ("It is

13   precisely the purpose of the primary jurisdiction doctrine to avoid the possibility of

14   conflicting rulings by courts and agencies within the agency's special

15   competence."); *see also, e.g., Syntek Semiconductor Co.*, 307 F.3d at 781-82;

16   *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 133, 1350 (D.N.M.

17   1995). Here the conflict already exists, because, as described above, Plaintiff asks

18   this Court to establish a state standard that would directly conflict with

19   requirements in FDA's Final Rule. The Final Rule requires sunscreen

20   manufacturers to label their products with the precise numerical values resulting

21   from SPF testing procedures. The Guidance for Industry directs companies to do

22   the same. Plaintiff asks the Court to overrule FDA and limit SPF claims to 50.

23   The conflict could not be more direct.

24   Nor is the conflict lessened by the fact that FDA continues to address the

25   issues that Plaintiff asks this Court to address. First, the Final Rule and Guidance

26   for Industry reflect FDA's determination as to how the scientific and regulatory

27

28   uniformity in the labeling of [the ingredient] and will utilize the special expertise of the FDA in evaluating the relevant factors for approving food additives." *Id.* at 770.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   policy issues pertaining to SPF labeling should be resolved for now, and also for
2   the time period encompassing Plaintiff's purchases. *See* Preamble to Final Rule,
3   discussed *supra*. Second, it is not this Court's role to preempt the outcome of
4   FDA's ongoing rulemaking by establishing a state standard for OTC sunscreen
5   SPF labeling requirements. Allowing Plaintiff's claims to proceed would open the
6   door to varying and conflicting labeling requirements across the country –
7   precisely what the doctrine of primary jurisdiction is intended to prevent.
8        In its ongoing rulemaking, FDA will gather new clinical test data, reevaluate
9   the comparative benefits of sunscreen products with differing SPF values under
10  different use scenarios, and reconsider what labeling requirements, as a matter of
11  science and policy, are most appropriate for a diverse group of sunscreen
12  consumers. 76 Fed. Reg. at 35,672, 35,675. As already indicated, FDA might not
13  make any changes to current requirements, or might conclude that the answers to
14  these questions should not be the same for all products and all consumers. *See*
15  Proposed Rule, discussed *supra*. For example, Plaintiff concedes that that SPF 100
16  blocks more UVB rays than SPF 50. (Amended Complaint ¶ 3.) Whether this
17  difference in SPF values is clinically relevant for all consumers, or some, or none,
18  and under what use scenarios, and whether (or how) this information should be
19  provided to consumers, are scientific and policy matters committed to FDA's
20  expertise and discretion, and certainly well outside the conventional experience or
21  expertise of judges or juries. Asking this Court to answer those questions now,
22  without waiting for further action by the FDA, in addition to creating immediate
23  conflict with the current Final Rule, gives rise to the very real possibility of
24  conflict with FDA's next final rule. Thus, even if FDA had not already
25  promulgated a Final Rule addressing these technical and policy issues, the
26  potential for conflict with the ongoing rulemaking would require that the Court
27  invoke the doctrine of primary jurisdiction and defer to the FDA.
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1    Plaintiff is not asking this Court to decide whether a product caused an

2  injury.  Plaintiff is asking the Court to decide whether the sale of products

3  regulated by FDA should be allowed to continue, and under what conditions (with

4  what SPF labeling).  However, it is "implicit in the regulatory scheme . . . that

5  FDA has jurisdiction to decide [the relevant issues] with administrative finality,

6  subject to the types of judicial review provided."  *Weinberger*, 412 U.S. at 653.

7  *See also Ctr. for Biological Diversity, Inc. v. FPL Group, Inc.*, 166 Cal. App. 4th

8  1349, 1355 (Cal. Ct. App. 2008) ("Permitting the action to proceed as presented

9  would . . . threaten redundancy at best and inconsistency at worst.").

10   **D.    Plaintiff's Request For Injunctive Relief Confirms The**
         **Appropriateness Of Applying The Doctrine Of Primary**
11       **Jurisdiction.**

12    Plaintiff asks this Court to enjoin compliance with the requirements of

13  FDA's Final Rule.  (Amended Complaint ¶ 8.)  Numerous courts have recognized

14  that "[p]rimary jurisdiction will often be invoked when a plaintiff seeks injunctive

15  relief, because there is the greatest likelihood that a court's order will interfere with

16  [the] administrative agency's proceedings."  *B.H.*, 506 F. Supp. 2d at 805; *accord*

17  *Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 998 (D. Kan. 1997);

18  *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry.*, 857 F. Supp. 838, 842-44

19  (D.N.M. 1994).

20    By seeking injunctive relief, Plaintiff unquestionably asks the Court to play

21  a regulatory role.  Such an undertaking is not allowed.  "The courts are available to

22  review the responses of [] agencies, but they are not available to supersede their

23  role in the regulatory process." *Ctr. for Biological Diversity*, 166 Cal. App. 4th at

24  1372; *accord Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292,

25  1295 (Cal. Ct. App. 2007) (sustaining demurrer where adjudicating the controversy

26  would have involved the court in complex health matters and required it to

27  "assume regulatory functions").

28

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1      Nor can Plaintiff avoid the primary jurisdiction of the FDA by abandoning

2 her claim for injunctive relief. The intrusion on FDA's jurisdiction applies equally

3 to all of Plaintiff's claims for relief; it does not matter that FDA cannot grant the

4 monetary relief that Plaintiff requests. "[I]t is not a premise of the doctrine of

5 primary jurisdiction that the agency have the power to give the relief sought in the

6 judicial action." *United States v. U.S. Steel Corp.*, 645 F.2d 1285, 1292 n.11 (8th

7 Cir. 1981); *accord IPCO Safety Corp. v. WorldCom, Inc.*, 944 F. Supp. 352, 355-

8 56 (D.N.J. 1996); *Clark*, 567 F. Supp. 2d at 715. As the Second Circuit has stated:

9 "Because the purpose of the doctrine [is] to assure that the agency will not be by-

10 passed on what is especially committed to it…, the doctrine applies *even if the*

11 *agency has no jurisdiction to grant the relief sought.*" *Alberta Gas Chems., Ltd. v.*

12 *Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981) (emphasis added) (quotation

13 omitted).

14      In sum, the core principles advanced by the doctrine of primary jurisdiction,

15 and the factors courts typically consider when applying the doctrine, all weigh

16 heavily in favor of applying the doctrine in this case.

17 **V.    EVEN ABSENT PREEMPTION, PLAINTIFF'S CLAIMS FAIL
BECAUSE SHE LACKS ARTICLE III STANDING AND FAILS TO**

18 **IDENTIFY ANY EXPRESS WARRANTY**

19      Even if this Court does not conclude that Plaintiff's claims are preempted or

20 barred, Plaintiff's claims still fail. Plaintiff alleges to have purchased only one of

21 the ten products listed in her Amended Complaint. As a result, Plaintiff lacks

22 standing to pursue those claims because she could not have suffered any

23 particularized injury in fact. Additionally, Plaintiff's conclusory and vague

24 allegations regarding the sole Purchased Product fall well short of establishing

25 Article III or statutory standing. Moreover, Plaintiff's express-warranty claim fails

26 because Plaintiff fails to show that an express warranty even exists.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

A.   **Legal Standard For Motions To Dismiss.**

Although the Court must accept factual allegations as true for purposes of a motion to dismiss, that "tenant . . . is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Courts undertake the critical gatekeeping function of ensuring that a defendant is not unfairly required "to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

More scrutiny and a more rigorous pleading standard apply where, as here, a plaintiff alleges claims sounding in fraud. *See* Fed. R. Civ. P. 9(b).   The Ninth Circuit has held that the Rule 9 standard "appl[ies] to claims for violations of the CLRA and UCL" that are based on a defendant's alleged fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Kwikset v. Superior Court*, 51 Cal. 4th 310, 326 n.9 (Cal. 2011) (noting that where "statutory provisions simply codify prohibitions against certain specific types of misrepresentations," the theory of the case sounds in fraud).

Accordingly, Plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct" and "state with particularity the circumstances constituting fraud." *Kearns*, 567 F.3d at 1124 (citations omitted). Thus, the allegations must include "the 'who, what, when, where and how' of the misconduct charged," *id.* at 1124 (citations omitted), and "the time, place, and specific content of the false representations," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted).   "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

**B.** **Plaintiff Lacks Article III Standing To Pursue Any Of Her Claims.**

No justiciable case or controversy exists under Article III of the Constitution unless Plaintiff can show "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000). The UCL and CLRA similarly require a showing of injury and actual reliance for Plaintiff to have statutory standing. *See* Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a).

To establish Article III standing, Plaintiff must show that she has suffered a concrete and particularized injury in fact that was caused by Defendants' conduct. *Friends of Earth, Inc.*, 528 U.S. at 180-81. Plaintiff fails to make such a showing. Plaintiff alleges only that she purchased one of the ten products included in the Amended Complaint. As a result, Plaintiff lacks standing to pursue any claims that pertain to the Unpurchased Products.

**1.** **Plaintiff Could Not Have Suffered Any Injury In Fact From The Unpurchased Products.**

While Plaintiff includes ten products in the Amended Complaint, she does not allege that she purchased nine of the ten products listed. (*See* Amended Complaint ¶ 12.) Without purchasing these products, Plaintiff lacks standing because she cannot identify a particularized injury in fact for each of her claims. *See San Luis & Delta-Mendota Water Auth. v. U.S. Dept. of the Interior*, No. 22-cv-00952-LJO-GSA, 2012 U.S. Dist. LEXIS 149672, at *16 (E.D. Cal. Oct. 17, 2012) ("Standing is evaluated on a claim-by-claim basis.")

Federal courts in the Ninth Circuit repeatedly have held that a plaintiff cannot expand the scope of her claims to include products she did not purchase. *See Johns v. Bayer Corp.*, No. 09-CV-1935 DMS (JMA), 2010 U.S. Dist. LEXIS

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1   10926, at *13 (S.D. Cal. Feb. 9, 2010) (holding that, where a plaintiff brought UCL

2   and CLRA claims based on vitamin products with allegedly misleading statements,

3   the plaintiff "cannot expand the scope of [her] claims to include a product [she] did

4   not purchase"); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-010044 JSW,

5   2011 U.S. Dist. LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011) (dismissing claims

6   as to the ice cream products that plaintiff did not purchase for lack of standing);

7   *Hairston v. South Beach Bev. Co.*, No. CV 12-1429-JFW (DTBx), 2012 U.S. Dist.

8   LEXIS 74279, at *16 n.5 (C.D. Cal. May 18, 2012) (dismissing claims because

9   Article III and the statutory standing requirements of the UCL and CLRA do not

10   permit expanding the scope of claims to include products the plaintiff did not

11   purchase); *Dysthe v. Basic Research, L.L.C.*, No. CV 09-08013 AG (SSx), 2011

12   U.S. Dist. LEXIS 137315, at *10-11 (C.D. Cal. June 13, 2011) (holding the

13   plaintiff lacked standing as to the product not purchased even though the plaintiff

14   alleged that the two products were nearly identical); *Mlejnecky v. Olympus*

15   *Imaging Am. Inc.*, No. 2:10-cv-2630, 2011 U.S. Dist. LEXIS 42333, at *11-13

16   (E.D. Cal. April 19, 2011) (dismissing plaintiff's CLRA and UCL claims as to a

17   camera model that plaintiff alleged had the same underlying defects and

18   advertising as the model she purchased).[15]

19          Plaintiff cannot use the class action procedure to evade this authority and

20   expand her substantive rights, and lacks standing as to the Unpurchased Products.

21   Thus, all of Plaintiff's claims related to the Unpurchased Products should be

22   dismissed, or alternatively, stricken pursuant to Rule 12(f).

23

24

25   [15] Without question, Plaintiff's claims would fail had she brought them for the
     Unpurchased Products individually. The analysis does not change simply

26   because Plaintiff has filed her claims as a class action. "Rule 23's requirements
     must be interpreted in keeping with Article III constraints, and with the Rules

27   Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge
     or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S.

28   591, 613 (1997) (quoting U.S.C. § 2072(b)).

LATHAM&WATKINSⁱⁱᵖ
ATTORNEYS AT LAW
LOS ANGELES

23

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

2.  **Plaintiff Fails To Plead An Injury In Fact As To The Purchased Product.**

To bring an action in federal court, Plaintiff must identify the concrete and particularized injury in fact she suffered as a result of Defendants' conduct. *See Friends of Earth*, 528 U.S. at 180-81. For the injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiff alleges only that she "would not have purchased [the Purchased Product] had she known that the Product does not provide the represented superior UVB protection." (Amended Complaint ¶ 26.) She fails to describe how she decided on the Purchased Product as opposed to other sunscreen products that make similar representations, what other factors were considered in making her decision, or how well the Purchased Product performed. Plaintiff also fails to state what other product she would have purchased, the price of the alternative product, or the UV-protection representations made by the alternative product. Without stating the alternative, Plaintiff cannot show an injury in fact.

That Plaintiff would not have purchased *any* sunscreen product is implausible given that Plaintiff's *only* factual allegations about her purchasing decision was that she relied on the "superior UVB protection claims." Plaintiff's conclusory statement fails to meet Rule 9(b)'s pleading requirements. *See Ashcroft*, 556 U.S. at 678-79.

C.  **Plaintiff Fails To State A Claim For Breach Of Express Warranty.**

Plaintiff's claim for breach of express warranty also fails. Plaintiff has not shown that a warranty exists, let alone that she relied on that warranty to make her lone purchase. Moreover, Plaintiff failed to provide the requisite notice to Defendants of her breach-of-warranty claim, which also independently warrants dismissal of her claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1

        **1.**    <u>**Plaintiff Fails To Plead Facts Sufficient To Support Her Breach-Of-Warranty Claim.**</u>

2

      To establish a breach of warranty claim, Plaintiff must adequately allege the

3

following: "(1) the exact terms of the warranty; (2) reasonable reliance thereon;

4

and (3) a breach of warranty which proximately caused plaintiff's injury." *Tomek*

5

*v. Apple, Inc.*, No. 2:11-cv-02700-MCE-DAD, 2012 U.S. Dist. LEXIS 96321, at

6

*17 (E.D. Cal. July 11, 2012) (citations omitted).

7

      Here, Plaintiff fails to state, with any degree of specificity, the terms of the

8

alleged express warranty. An express warranty is an "*explicit* promise by the seller

9

with respect to the quality of goods that is part of the bargain between the parties . .

10

. 'that the goods shall conform to the affirmation or promise.'" *Stearns v. Select*

11

*Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (quoting

12

U.C.C. § 2-313) (emphasis added). A plaintiff must allege the "exact terms of the

13

warranty." *Id.*

14

      Plaintiff has not identified the specific terms of the warranty she claims

15

exists. Instead, Plaintiff vaguely asserts that the only product she purchased "did

16

not provide proportionally greater sunburn protection as represented." (Amended

17

Complaint ¶ 12.)   However, Plaintiff does not – and cannot – identify any

18

representation that it provided *proportionally* greater protection than any other

19

sunscreen product. Indeed, the "explicit promise" that is actually on the Purchased

20

Product's label – that the Purchased Product has an SPF value of 80 – remains

21

unchallenged by Plaintiff.

22

      Because Plaintiff fails to allege the exact terms of the express warranty, her

23

breach-of-warranty claim must fail.

24

        **2.**    <u>**Plaintiff Failed To Provide Proper Notice Of The Alleged Breach.**</u>

25

26

      To succeed on a claim for breach of warranty, a plaintiff must "plead that

27

notice of the alleged breach was provided to the seller within a reasonable time

28

after discovering the breach." *Stearns v. Select Comfort Retail Corp.*, No. 08-2746

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

25

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1  JF, 2009 U.S. Dist. LEXIS 48367, at *13 (N.D. Cal. June 5, 2009).  The

2  requirement of providing notice of the breach before the lawsuit is a "sound

3  commercial rule" designed to allow the defendant opportunity, among other things,

4  to negotiate a settlement.  *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380

5  (Cal. 1974).

6      Plaintiff's conclusory statement that "Defendants were provided notice of

7  these issues by, *inter alia*, the instant Complaint" does not fulfill her notice

8  obligations.  (*See* Amended Complaint ¶ 68.)  Notice of an alleged breach that is

9  first provided in the legal complaint does not constitute pre-suit notice and is

10  contrary to the purpose of the rule.   Plaintiff's failure to provide pre-suit notice is a

11  fatal flaw that warrants dismissal of her breach-of-warranty claims.

12  **VI.   PLAINTIFF'S CLAIM FOR DAMAGES AND RESTITUTION**

13  **UNDER THE CLRA MUST BE STRICKEN BECAUSE PLAINTIFF FAILED TO PROVIDE PRE-SUIT NOTICE**

14      The Court should dismiss Plaintiff's CLRA claims for damages and

15  restitution because she failed to provide Defendants with the requisite pre-suit

16  notice.  Asserting a claim under §1782 required Plaintiff to notify Defendants

17  "thirty days or more prior to the commencement" of this action.  *See* California

18  Code of Civil Procedure § 1782(a)(1).  "Strict adherence to the statute's notice

19  provision is required to accomplish the Act's goals of expeditious remediation

20  before litigation," and no "distinction [exists] between inadvertence or willful

21  disregard of the notice requirements." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp.

22  2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007); *see also*

23  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975) (warning

24  that the clear purpose of facilitating precomplaint settlements of consumer actions

25  "may only be accomplished by a literal application of the notice provisions.").

26      Here, Plaintiff admittedly failed to comply with the Act's clear

27  requirements.  Plaintiff's notice-and-demand letter is dated November 2, 2012, the

28  same day she filed her initial complaint and sought restitution under the CLRA.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

26

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)

1 | (*See* ECF No. 1, ¶ 58.)   Because Plaintiff seeks restitution, proper notice was
2 | required. *See Ries v. Hornell Brewing Co.*, No. 10-cv-01139-JF/PSG, 2011 U.S.
3 | Dist. LEXIS 36845, at *15 (N.D. Cal. Apr. 4, 2011) ("[A] restitution claim brought
4 | under the CLRA is a claim for damages and requires proper notice.").

5 | Because she failed to provide *any* pre-litigation notice, Plaintiff failed to
6 | comply with the Legislature's explicit pre-filing notice requirements for filing a
7 | CLRA claim.  Plaintiff's claims for actual damages and restitution should therefore
8 | be dismissed with prejudice.

9 | **VII.   CONCLUSION**

10 | The doctrines of preemption and primary jurisdiction preclude Plaintiff's
11 | claims and require deference to the FDA's expertise.  Nonetheless, to the extent
12 | not preempted, Plaintiff lacks standing to sue because she has failed to show that
13 | any of Defendants' products caused her any actual injury in fact.  Plaintiff's
14 | express-warranty claim must also fail because she fails to even show that a
15 | warranty exists.  Plaintiff's Amended Complaint should therefore be dismissed
16 | with prejudice.

17 | Dated:  January 16, 2013

LATHAM & WATKINS LLP
Daniel Scott Schecter
William Rawson
Michael J. Reiss

By  *[signature]* /MJR
Daniel Scott Schecter
Attorneys for Defendants
Energizer Holdings, Inc.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

27

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(CASE NO. 12-CV-01736-AWI-SKO)