1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AIDA CORRA, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ENERGIZER HOLDINGS, INC., et al.,<br><br>    Defendants.<br><br>_____/ | 1:12-cv-01736-AWI-SKO<br><br>**ORDER RE: MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>(Docs. 19, 30) |

**I. INTRODUCTION**

Defendants Energizer Holdings, Inc., et al., have filed a motion to dismiss the first amended complaint without leave to amend.  Plaintiff Aida Corra has filed a motion for leave to file a second amended complaint.  For reasons discussed below, Defendants' motion shall be granted in part and denied in part; Plaintiff's motion shall be denied as moot.

**II. FACTS AND PROCEDURAL BACKGROUND**

1

1

2

The Court refers the parties to previous orders for a complete chronology of the proceedings. On November 26, 2012, plaintiff Aida Corra, individually and on behalf of all others similarly situated (hereinafter referred to as "Plaintiff"), filed her first amended class-action complaint (FAC) against defendants Energizer Holdings, Inc., Playtex Products, LLC fka Playtex Products, Inc., and Sun Pharmaceuticals, LLC (hereinafter referred to as "Defendants"), asserting causes of action for violations of California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code, § 17200 et seq.) and Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code, § 1750 et seq.) and breach of express warranty. Plaintiff alleged as follows:

> "Defendants distribute, market and sell a variety of sun and skincare products. This lawsuit concerns the Banana Boat SPF [sun protection factor] 85-110 collection, a line of 10 sunscreen products labeled with a SPF of 85 or greater. The Banana Boat SPF 85-110 collection is sold online and at a variety of third-party retailers including Wal-Mart, Target, Walgreens and CVS."

Plaintiff further alleged:

> "Since launching the Banana Boat SPF 85-110 collection, Defendants have consistently conveyed the message to consumers throughout the United States, including California, that the Banana Boat SPF 85-110 collection provides superior UVB protection compared to comparable lower SPF valued products, including the Banana Boat SPF 50 Products. They do not. Defendants' superior UVB protection claims are false, misleading and deceptive."

Plaintiff further alleged:

> "There are only two material differences between the Products in the Banana Boat SPF 85-110 collection and the Banana Boat SPF 50 Products: (1) the SPF values; and (2) the price. The Banana Boat SPF 85-100 collection retails for a premium over comparable lower SPF products, including the Banana Boat SPF 50 Products. For example, the Sport Performance® Sunscreen SPF 100 Lotion Plaintiff purchased contains all of the active ingredients and provides the same UVB protection as Sport Performance® Sunscreen SPF 50 Lotion. Yet, the Sport Performance® Sunscreen

2

> SPF Lotion Plaintiff bought retails for at least a $1.00 or more over the Sport Performance® Sunscreen SPF 50 Lotion product."

Plaintiff further alleged:

> "A sunscreen's SPF value is calculated by comparing the time needed for a person to burn unprotected with how long it takes for that person to burn wearing sunscreen. So a person who turns red after 20 minutes of unprotected sun exposure is theoretically protected 15 times longer if they adequately apply SPF 15. Importantly, the SPF rating system is non-linear. Also importantly, scientific studies establish that sunscreen products with SPF values over 50 provide no additional clinical benefit to consumers. SPF 100 blocks 99 percent of UV rays, while SPF blocks 98 percent, an immaterial difference that yields no clinical benefit to consumers."

Plaintiff further alleged:

> "To stop the false sense of security high numbered SPF products create in the minds of consumers, in June 2011 the FDA proposed a regulation governing the labeling of sunscreen products that would cap SPF values at 'SPF 50+.'" *See* 76 Fed. Reg. 35672. According to the FDA, there is insufficient data 'to establish that products with SPF values higher than 50 provide additional clinical benefit over SPF 50 sunscreen products.' *Id*. at 35673. In fact, scientific studies establish that there is no added clinical benefit associated with SPF values over 50. The FDA's proposed SPF 50+ rule harmonizes with other countries, including Australia and the European Union, that have imposed similar SPF labeling restrictions to reduce consumer confusion."

Plaintiff further alleged:

> "Defendants' superior UVB protection claims are designed to take advantage of health conscious consumers seeking protection from the damaging effects of unprotected sun exposure as increasingly expressed by members of the medical community and documented by the media. Each and every consumer who purchases a Product in the SPF 85-110 collection is exposed to the 85, 100 or 110 SPF values, which appear prominently and conspicuously on the front and center of the Product label set-off from the other representations."

Plaintiff further alleged:

3

> "Despite the scientific evidence that SPF values higher than 50 provide no additional clinical benefit, Defendants continue to claim that the Banana Boat SPF 85-110 collection provides superior UVB protection and sells the Products for a price premium over comparable lower value SPF products, including the Banana Boat SPF 50 Products."

Plaintiff further alleged:

> "As the distributor of the Banana Boat SPF 85-110 collection, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in their Products, and are in a superior position to learn of the effects – and have learned of the effects – their Products have on consumers.  [¶] Specifically, Defendants knew or should have known, but failed to disclose that the Banana Boat SPF 85-110 collection does not provide superior UVB protection compared to less expensive, lower value SPF products, including the Banana Boat SPF 50 Products."

Plaintiff further alleged:

> "Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive superior UVB protection claims.  Plaintiff purchased and applied Sport Performance® Sunscreen SPF 100 Lotion during the Class period and in doing so, read and considered the Sport Performance® Sunscreen SPF 100 Lotion label and based her decision to buy and pay a premium for Sport Performance® Sunscreen SPF 100 Lotion on the superior UVB protection claims.  Defendants' superior UVB protection claims were a material factor in influencing Plaintiff's decision to purchase and use Sport Performance® Sunscreen SPF 100 Lotion.  Plaintiff would not have purchased Sport Performance® Sunscreen SPF 100 Lotion had she known that the Product does not provide the represented superior UVB protection."

Plaintiff further alleged:

> "As a result, Plaintiff and the Class members have been damaged by their purchases of the Banana Boat SPF 85-110 collection and have been deceived into purchasing Products that they believed, based on Defendants' representations, provide superior UVB protection compared to less expensive, comparable lower valued SPF products, including the Banana Boat SPF 50 Products, when, in fact, they do not.  [¶] Defendants have reaped enormous profits

from their false marketing and sale of the Banana Boat SPF 85-110 collection."

On January 16, 2013, Defendants filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 13, 2013, Plaintiff filed her opposition to Defendants' motion to dismiss. Defendants filed their reply to Plaintiff's opposition on March 4, 2013. On March 5, 2013, Plaintiffs filed a motion for leave to file a second amended complaint (i.e., to re-plead). On March 25, 2013, Defendants filed their opposition to Plaintiff's motion for leave to re-plead. Plaintiff filed her reply to Defendants' opposition on April 1, 2013.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences.

*Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).  "Dismissal . . . without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. DISCUSSION

***A. Defendants' first argument (preemption)*** – As a threshold matter, Defendants contend Plaintiffs' claims are preempted in their entirety by federal law, both expressly by the provisions of 76 Fed. Reg. 35,620[1] and impliedly because they conflict with the statutory scheme governing the labeling of sunscreen products, and must therefore be dismissed.  "Federal law may preempt state law in three ways.  First, 'Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.'  [Citation.]  Second, 'States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive guidance.'  [Citation.]  Finally, 'state laws are preempted when they conflict with federal law.' "  *Gilstrap v. United Air Lines, Inc.,* 709 F.3d 995, 1003 (9th Cir. 2013) (quoting *Arizona v. United States,* 567 U.S._, 132 S.Ct. 2492, 2500-01, 183 L.Ed.2d 351 (2012)).  Regardless of the type of preemption involved – express, field, or conflict – 'the purpose of Congress is the ultimate touchstone of the pre-emption analysis.' "  *Id.* (quoting *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

***1. Express preemption*** – "Preemption law begins with the presumption that Congress does not 'intend to displace state law.' "  *Holmes v. Merck & Co., Inc.,* 697 F.3d 1080, 1085 (9th Cir.

---

[1] FDA Final Rule, Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use, 76 Fed. Reg. 35,620 (June 17, 2011) (codified at 21 C.F.R. § 201.327) (hereinafter "the Final Rule").

6

2012) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).   That being said, "Congress may displace state law through express preemption provisions."   *Do Sung Uhm v. Humana, Inc.,* 620 F.3d 1134, 1148 (9th Cir. 2010).   "[In] construing an express preemption clause, a reviewing court must necessarily begin by examining the clause's 'plain wording,' as this 'necessarily contains the best evidence of Congress' pre-emptive intent.' "   *Holmes, supra,* at p. 1085 (quoting *Sprietsma v. Mercury Marine,* 537 U.S. 51, 62-63, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002)).   The court's task "is to identify the domain expressly pre-empted by that language.' "   *Do Sung Uhm, supra,* at p. 1148 (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).   "[O]nly where it is the 'clear and manifest [intent] of Congress' " may preemption be found.   *Id.* (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

By its terms, the Final Rule "establishes the labeling and testing requirements for OTC [over-the-counter] sunscreen products containing specific ingredients or combinations of ingredients and marketed without an approved application under section 505 of the Federal Food, Drug and Cosmetic Act [(FDCA)] (21 U.S.C. 355)[.]"   76 Fed. Reg. 35,620, subsection (B). Through the Final Rule, the FDA codified in 21 C.F.R. part 201 certain requirements for OTC sunscreen products, including "specific claims that render a covered product misbranded or are not allowed on any OTC sunscreen drug product marketed in the United States without an approved application."   *Id.*   Defendants point to the fact that the regulation promulgated by the Final Rule expressly provides that the numerical SPF value resulting from the FDA-mandated SPF testing procedure must be placed on a sunscreen product's principal display panel, *see* 21 C.F.R. § 201.327(a)(i)(A), (ii), and does not expressly include SPF ratings above 50 as being a false or misleading claim.   *See id.*, § 201.327(c)(3), (g).   Defendants contend that because the

testing procedure resulted in SPF values of 85 to 110 for the products in their SPF 85-110 collection, those values were required to be placed on the products' labels pursuant to 21 C.F.R. § 201.327(a)(i).  From this, Defendants further contend that "Plaintiff seeks to impose a different state requirement, one that would prohibit use of SPF values above 50, which [the] FDA currently requires," the implication being it would be impossible for Defendants to simultaneously comply both with FDA regulations governing labeling and any heightened duty it could conceivably be adjudged to have under California's UCL and CLRA jurisprudence.

The Court does not agree.  First, Plaintiff is not attempting to enforce any sort of state labeling requirement by seeking to prohibit the use of SPF ratings above 50, as Defendants contend, because Plaintiff's position is *not* that the SPF 85-110 ratings on Defendants' products are themselves per se false or misleading.  Rather, Plaintiff alleges the way Defendants marketed their sunscreen products *beyond* simply providing an SPF rating – in effect, combining the use of SPF ratings with price differentials and claims of proportionally greater protection – misled consumers into purchasing more expensive, higher SPF-rated products even though, according to Plaintiff, these products did not provide proportionally greater protection than less expensive, lower SPF-rated products.  If Plaintiff were to prevail under the UCL and CLRA, Defendants' SPF labeling duties would remain unchanged.

Second, to the extent Defendants intend to argue that 21 C.F.R. § 201.327 encompasses the general duty not to engage in false or misleading advertising – and preempts the UCL and CLRA on this issue – in that the C.F.R. accounts for all claims by a sunscreen purveyor that could conceivably be deemed false or misleading (i.e., claims not expressly accounted for in the C.F.R., such as those alleged by Plaintiff, could not by virtue of preemption be deemed false or misleading under the UCL or CLRA), the argument is likewise without merit.  As to claims on

sunscreen products considered to be false and/or misleading, the C.F.R. prefaces the (brief) list of delineated claims with the phrase "[t]hese claims include but are not limited to[.]"  21 C.F.R. § 201.327(g).  The inclusion of this phrase means the list of delineated claims is not exclusive to other claims, and, in the Court's view, clearly evinces no intent to preempt state consumer fraud claims.  Accordingly, the Court shall not find Plaintiff's claims expressly preempted.

***2. Conflict preemption*** – Defendants further contend conflict (implied) preemption precludes Plaintiff's claims.  "Conflict preemption occurs when 'it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' "  *Gilstrap, supra,* 709 F.3d at 1008 (quoting *English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)).  Consistent with its analysis above, the Court finds it would not be impossible for Defendants to simultaneously comply with its FDA labeling duties and its duty not to engage in false or misleading advertising under the UCL and CLRA.  Furthermore, Plaintiff's claims are not based on (and do not require interpretation of) the Final Rule, but only require the Court to determine whether the advertising claims made by Defendants are false or misleading.  Accordingly, the Court finds Plaintiff's claims not impliedly preempted.

---

***B. Defendants' second argument (primary jurisdiction)*** – Defendants further contend Plaintiff's claims must be dismissed on ground of primary jurisdiction.  "[T]he primary jurisdiction doctrine is not jurisdictional at all in the usual sense; 'it is a prudential doctrine under which courts may,

under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *GCB Communications, Inc. v. U.S. South Communications, Inc.,* 650 F.3d 1257, 1263 (9th Cir. 2011) (citing *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.,* 307 F.3d 775, 781 (9th Cir. 2002)).  In particular, the doctrine "prescribes deference to an administrative agency where (1) the issue is not 'within the conventional experiences of judges,' (2) the issue 'involves technical or policy considerations within the agency's particular field of expertise,' (3) the issue is particularly within the agency's discretion,' or (4) 'there exists a substantial danger of inconsistent rulings.' " *Maronyan v. Toyota Motor Sales, U.S.A., Inc.,* 658 F.3d 1038, 1048-49 (2011) (quoting *Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166, 1172-73 (9th Cir. 2002)).

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds no basis to apply the doctrine.  As to this issue, Defendants first contend Plaintiff's claims must be dismissed because the issues raised by the claims are not within the conventional experiences of judges and involve technical/policy considerations within the FDA's particular field of expertise.  Not so.  Contrary to Defendants' contention, "the doctrine is not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.' " *Clark v. Time Warner Cable,* 524 F.3d 1110, 1114 (9th Cir. 2008) (quoting *Brown, supra,* 277 F.3d at 1172)).  "Instead, it is to be used only if a claim 'requires resolution of an issue of first impression, or a particularly complicated issue that Congress has committed to a regulatory agency.' " *Id*. at 1115 (quoting *Brown, supra,* at p. 1172).  Nothing suggests this could conceivably be the case with Plaintiff's claims. "Where, as here, the doctrine is invoked at the motion to dismiss stage, the question is 'whether the complaint plausibly asserts a claim that would *not* implicate the doctrine.' " *Chavez v. Nestle*

*USA, Inc.,* 511 Fed.Appx. 606, 607 (9th Cir. 2013) (quoting *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237, 1252 (9th Cir. 2009) (*rev'd on other grounds*, _U.S._, 131 S.Ct. 1342, 179 L.Ed.2d 457 (2011))) (emphasis original).  The gravamen of Plaintiff's claims is that Defendants violated California's consumer protection statutes by marketing their sunscreen products in a false and/or misleading manner so as to induce consumers to purchase those products.  Whether Defendants did so is the type of factual question that is routinely committed to the courts.

Defendants further contend Plaintiff's claims must be dismissed because they create a substantial danger of inconsistent rulings in that adjudication of this case could result in an outcome that conflicts with federal regulations.  Specifically, Defendants contend, "The Final Rule requires sunscreen manufacturers to label their products with the precise numerical values resulting from SPF testing procedures.  The Guidance for Industry directs companies to do the same.  Plaintiff asks the Court to overrule [the] FDA and limit SPF claims to 50.  The conflict could not be more direct."  Defendants' contention that Plaintiff "asks the Court to . . . limit SPF claims to 50" misinterprets the FAC.  Plaintiff simply requests damages and injunctive relief in connection with the allegations that Defendants' marketing and pricing schemes led consumers to believe the SPF 85-110 collection provided proportionally greater UVB protection than lower SPF-rated products, and to pay more for this supposed benefit, when such benefit did not exist. Plaintiff does not seek to impose a cap of SPF 50 on all sunscreen products.

Lastly, Defendants contend the FAC itself confirms the appropriateness of applying the primary jurisdiction doctrine in that Plaintiff improperly requests the Court enjoin compliance with the FDA's Final Rule.  Not so.  Nowhere does Plaintiff seek to enjoin Defendants from complying with the Final Rule; Plaintiff simply seeks to enjoin Defendants from further engaging in a course of conduct that violates the UCL and CLRA.  To the extent Defendants

intend to argue this would make it impossible for them to simultaneously comply with the Final Rule, the argument is not well taken.   As Plaintiffs observe, injunctive relief could involve ordering Defendants to (1) stop selling the SPF 85-110 collection at a premium over their lower SPF-rated products or (2) put a disclaimer on their SPF 85-110 products stating they do not provide proportionally greater benefit to consumers, neither of which would conflict with FDA regulations.   Thus, the Court shall not invoke primary jurisdiction to dismiss the FAC.

---

*C. Defendants' third argument (standing)* – Defendants further contend Plaintiff lacks Article III standing to pursue claims pertaining to products she did not purchase.   In the FAC, Plaintiff alleges she purchased the Sport Performance® Sunscreen SPF 100 Lotion based on Defendants' alleged misrepresentations.   However, Plaintiffs' UCL and CLRA claims allege Defendants' misrepresentations extended to nine products in Defendants' SPF 85-110 Collection that appear to have been unpurchased by Plaintiff: the Kids UltraMist® Sunscreen SPF 110 Continuous Clear Spray; Kids Ultramist® Sunscreen SPF 85 Continuous Clear Spray; Ultra Defense® UltraMist® Sunscreen SPF 110 Continuous Clear Spray; Ultra Defense® UltraMist® Sunscreen SPF 85 Continuous Clear Spray; Ultra Defense® Sunscreen SPF 100 Lotion;   Sport Performance® UltraMist® Sunscreen SPF 110 Spray; Sport Performance® UltraMist® Sunscreen SPF 85; Baby SPF 100 Lotion; and Kids SPF 100 Lotion.   Defendants argue Plaintiff could not have suffered injury in fact as to the unpurchased products.

District courts in California appear to be split on this issue.   In *Contreras v. Johnson & Johnson Consumer Companies, Inc.,* CV 12-7099-GW(SHx) (C.D.Cal. 2012), a UCL/CLRA

12

1

2   case involving alleged mislabeling of several sunscreen products, the defendant moved (as

3   Defendants essentially do here) to strike or dismiss the complaint pursuant to Federal Rule of

4   Civil Procedure 12(b)(1) in a manner limiting the plaintiff's claims to the particular sunscreen

5   product she had purchased. *Id.*, Docket No. 19, at p. 1. The court granted the motion, finding

6   plaintiff did not have standing to pursue claims concerning the unpurchased products: "Having

7   admittedly not purchased three of the four sunscreen products at issue in this case, Plaintiff

8   cannot have suffered any injury in fact with respect to those products, and therefore lacks Article

9   III standing in that regard . . . . She purchased only one [sunscreen product], and may therefore

10  maintain this action only with respect to that product." *Id.*, at pp. 2-3; *see Route v. Mead*

11  *Johnson Nutrition Co.,* 2013 WL 658251 (C.D.Cal. 2013) (unpublished), at *3-*4 (relying on

12  *Contreras* to dismiss consumer labeling claims concerning unpurchased products).

13       The court in *Anderson v. Jamba Juice Co.,* 888 F.Supp.2d 1000 (N.D.Cal. 2012), reached

14  a different result. In that case, a UCL/CLRA class action involving alleged misrepresentations

15  on at-home smoothie kit labels, the defendant argued the plaintiff did not have standing to bring

16  claims on behalf of purchasers of smoothie kit flavors he did not buy because he could not have

17  suffered any injury from them. *Id.* at 1005. The court disagreed, finding the plaintiff had

18  standing to bring claims on behalf of consumers who had purchased similar, but not identical,

19  products: "The 'critical inquiry . . . seems to be whether there is sufficient similarity between the

20  products purchased and not purchased.' [Citation.] If there is a sufficient similarity between the

21  products, any concerns regarding material differences in the products can be addressed at the

22  class certification stage. [Citation.] [¶] Here, Plaintiff is challenging the 'All Natural' labeling of

23  Jamba Juice at-home smoothie kits, which come in a variety of flavors – Mango-a-go-go,

24  Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz. There is

25

26                                          13

sufficient similarity between the products purchased . . . and the products not purchased . . . because the same alleged misrepresentation was on all of the smoothie kits regardless of flavor; all smoothie kits are labeled 'All Natural,' and all smoothie kits contain allegedly non-natural ingredients (xanthan gum, ascorbic acid and steviol glycosides).  Therefore, the Court finds that Plaintiff has standing to bring any claims on behalf of purchasers of smoothie kit flavors he did not buy, and the Court has subject matter jurisdiction over such claims."  *Id*. at 1005-1006.

The Court finds the *Anderson* court's reasoning to be more persuasive and shall adopt its approach here.  For the purpose of Defendants' motion, the Court further finds the product Plaintiff purchased is sufficiently similar to the nine products Plaintiff did not purchase in that Plaintiff alleges (1) they all contained virtually identical active ingredients and (2) Defendants marketed them in virtually the same manner.  Accordingly, Plaintiff has standing to bring claims concerning all ten products on behalf of herself and the putative class members.

As to this issue, Defendants further contend that, even assuming Plaintiff could be deemed to have suffered an injury in fact as to the unpurchased products, Plaintiff did not allege facts sufficient to establish such injury.  Not so.  "Standing, in the constitutional sense, requires that plaintiffs establish (1) a 'distinct and palpable' injury in fact (2) that is 'fairly traceable' to the challenged provision and (3) that would 'likely . . . be redressed' by a favorable decision for the plaintiff.  [Citations.]"  *Long Beach Area Peace Network v. City of Long Beach,* 574 F.3d 1011, 1019 (9th Cir. 2009).  "The requisite injury must be 'an invasion of a legally protect interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' [Citations.]"  *Birdsong v. Apple, Inc.,* 590 F.3d 955, 960 (9th Cir. 2009).  Plaintiff establishes an injury in fact by alleging economic injury – i.e., that she spent money to purchase

a product she would not otherwise have purchased absent Defendants' alleged misconduct. Defendants' standing arguments are therefore not grounds for dismissal of Plaintiffs' claims.

---

**D. Defendants' fourth argument (Plaintiff fails to allege breach of express warranty)** – Defendants further contend Plaintiff's third cause of action for breach of express warranty must be dismissed for failure to allege facts sufficient to state a plausible claim to relief.  Under this cause of action, Plaintiff alleges, "Defendants expressly warranted on each and every Product label in the Banana Boat SPF 85-110 collection that the Products provide proportionally greater UVB protection than comparable, lower SPF valued products, including the Banana Boat SPF 50 Products.  The superior UVB protection claims made by Defendants are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise."  Plaintiff further alleges, "Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a Product that provides superior UVB protection as represented."

"A warranty is a contractual promise from the seller that the goods conform to the promise.  If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted."  *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 830, 51 Cal.Rptr.3d 118 (2006) (citing Cal. Com. Code, §§ 2313, subd. (a) & 2714, subd. (2)).  Claims for breach of express warranty are governed by California Commercial Code section 2313, which provides:

"(1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Cal. Com. Code, § 2313.  "California courts use a three-step approach to express warranty issues. First, the court determines whether the seller's statement amounts to 'an affirmation of fact or promise' relating to the goods sold.  Second, the court determines if the affirmation or promise was 'part of the basis of the bargain.'  Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty."  *McDonnell Douglas Corp. v. Thiokol Corp.,* 124 F.3d 1173, 1176 (9th Cir. 1997) (citing *Keith v. Buchanan,* 173 Cal.App.3d 13, 220 Cal.Rptr. 392, 395 (1985)).

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds Plaintiff has failed to allege facts sufficient to state a claim.  Plaintiff alleges that by representing their products were rated at SPF 85, 110, etc., charging a premium for higher SPF-rated products and claiming higher SPF-rated products provided proportionally greater protection, Defendants "warranted" higher SPF-rated products had greater efficacy, thereby inducing her and her putative class members to those products when they would

otherwise have purchased less expensive, lower SPF-rated products with equivalent protection. Problematically for Plaintiff, even assuming Defendants' SPF ratings constituted a warranty, nothing suggests each of Defendants' products failed to function in accordance with its rating or claimed level of protection.  Consequently, Defendants' motion to dismiss the cause of action for breach of express warranty must be granted.

---

**E. Defendants' fifth argument (CLRA pre-litigation notice)** – Lastly, Defendants contend Plaintiff's CLRA cause of action must be dismissed because Plaintiff failed to provide Defendants with the requisite pre-suit notice.   "[T]he CLRA includes a prefiling notice requirement on actions seeking damages."   *Morgan v. AT&T Wireless Services, Inc.,* 177 Cal.App.4th 1235, 1259, 99 Cal.Rptr.3d 768 (2009).  Chapter 4 of the CLRA (commencing with Cal. Civ. Code, § 1780) provides in pertinent part: "Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following: [¶] (1) Notify the person alleged to have employed or committed methods, acts or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770. [¶] (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.  [¶] The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California."  Cal. Civ. Code, § 1782, subd. (a).  " 'If, within this 30-day period, the prospective defendant corrects the alleged wrongs, or indicates that it will make such corrections within a reasonable time, no cause of action for

Case 1:12-cv-01736-AWI-SKO   Document 54   Filed 08/02/13   Page 18 of 22

damages will lie.' " *Morgan, supra,* 144 Cal.App.4th at 1259; *see* Cal. Civ. Code, §1782, subd. (b). "An action for *injunctive relief* brought under the specific provisions of Section 1770 may," however, "be commenced without compliance with subdivision (a) [of section 1782]." Cal. Civ. Code, § 1782, subd. (d) (emphasis added). "Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages." *Id.*

In her original complaint filed October 24, 2012, Plaintiff alleged, "Defendants violated the [CLRA] by representing and failing to disclose material facts on the Banana Boat SPF 85-110 collection labeling and packaging and associated advertising . . . when it knew, or should have known, that the representations were false or misleading and that the omissions were of material facts it was obligated to disclosed.  [¶] Pursuant to California Civil Code § 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement."  Plaintiff further alleged, "Pursuant to § 1782 of the [CLRA], Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the [CLRA] and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act . . . . [¶] If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the [CLRA], Plaintiff will amend this Complaint to add claims for actual punitive and statutory damages, as appropriate."  The pre-suit notice letters Plaintiff allegedly mailed to Defendants, copies of which were attached as exhibits to the complaint, were dated October 24, 2012 – the same day the complaint was filed.

18

damages will lie.' " *Morgan, supra,* 144 Cal.App.4th at 1259; *see* Cal. Civ. Code, §1782, subd. (b). "An action for *injunctive relief* brought under the specific provisions of Section 1770 may," however, "be commenced without compliance with subdivision (a) [of section 1782]." Cal. Civ. Code, § 1782, subd. (d) (emphasis added). "Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages." *Id.*

In her original complaint filed October 24, 2012, Plaintiff alleged, "Defendants violated the [CLRA] by representing and failing to disclose material facts on the Banana Boat SPF 85-110 collection labeling and packaging and associated advertising . . . when it knew, or should have known, that the representations were false or misleading and that the omissions were of material facts it was obligated to disclosed.  [¶] Pursuant to California Civil Code § 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement."  Plaintiff further alleged, "Pursuant to § 1782 of the [CLRA], Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the [CLRA] and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act . . . . [¶] If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the [CLRA], Plaintiff will amend this Complaint to add claims for actual punitive and statutory damages, as appropriate."  The pre-suit notice letters Plaintiff allegedly mailed to Defendants, copies of which were attached as exhibits to the complaint, were dated October 24, 2012 – the same day the complaint was filed.

If the original complaint were the operative complaint, and Defendants were moving to dismiss *that* complaint (as opposed to the FAC), the Court might be inclined to grant the motion or at least strike Plaintiff's request for CLRA restitution and disgorgement.  At the time, Plaintiff was entitled to request only injunctive relief under the CLRA because Plaintiff did not give notice to Defendants at least thirty days prior to the filing of the complaint.[2]  Problematically for Defendants, Plaintiff filed the operative pleading – the FAC – on November 26, 2012, more than thirty days after the October 24, 2012 letters were mailed.   In the FAC, Plaintiff alleges, "Defendants failed to rectify or agree to rectify the problems . . . and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the [CLRA].  Therefore, Plaintiff further seeks actual, punitive and statutory damages, as appropriate."  Because Defendants have not identified anything technically non-compliant about the notice letters, and the notice letters predated the FAC by more than thirty days, Plaintiff was entitled to request damages in the FAC, regardless of whether she could have done so in the complaint.

Even though the FAC postdates the notice letters by more than thirty days, Defendants argue Plaintiff's claim for damages and other non-equitable CLRA relief should nonetheless be dismissed with prejudice for Plaintiff's failure to comply with the notice requirement prior to filing the original complaint.  In doing so, Defendants essentially seek to have the Court interpret the CLRA's provision that notice be given "[t]hirty days or more prior to the commencement of an action for damages," Cal. Civ. Code, § 1782, subd. (a), to require compliance before commencement of *any* CLRA action, regardless of the relief requested.   That is to say,

---

[2] While the language of the complaint suggested it was Plaintiff's intent to limit her demand to injunctive relief, and that she would not amend the complaint to request damages unless Defendants failed to rectify the problems asserted in the October 24, 2012 letters, the complaint also appeared to seek restitution and disgorgement under the CLRA.  Thus, it was unclear whether the CLRA claim was in fact limited to injunctive relief.  (The Court could, of course, have construed it as so.)  As the Court shall explain, even if it were not, such defect would not, as Defendants now contend, serve as ground to dismiss Plaintiff's request for CLRA damages and restitution *with prejudice*.

19

1

2   Defendants contend the notice requirement must be met before a CLRA action may be brought,

3   even if the complaint requests only injunctive relief but no damages under the CLRA, and that if

4   the requirement is not met before suit is commenced, the complaint cannot subsequently be

5   amended to request CLRA damages.   The Court does not agree.   Notwithstanding the fact the

6   statute expressly provides notice need not be given before the litigation commences when, as

7   was arguably the situation in this case, the action initially requests only injunctive relief, *see* Cal.

8   Civ. Code, § 1782, subd. (d), *Morgan* rejected the argument Defendants impliedly make here.

9       The plaintiffs in *Morgan* brought an action for violation of the CLRA in July 2004 but

10  did not allege a claim for damages until they filed their second amended complaint in September

11  2006.  *Morgan, supra,* 177 Cal.App.4th at 1260.   Although the plaintiffs alleged in the second

12  amended complaint they had provided the defendant with the requisite notice, the trial court

13  sustained defendant's demurrer to the CLRA claim on ground plaintiffs had not properly

14  complied with the notice requirement.   The plaintiffs then filed a third amended complaint, again

15  requesting damages, in which they alleged they mailed the required notice in January 2007.  *Id*.

16  On appeal, the defendant argued the plaintiffs were precluded from seeking damages under the

17  CLRA, and that the plaintiffs' request for damages should be dismissed with prejudice, because

18  they did not comply with the notice requirement before filing the second amended complaint,

19  wherein they had first sought damages.  *Id*. at 1260-61.   The court disagreed: "[Defendant's]

20  assertion that failure to comply with the notice requirement requires dismissal with prejudice

21  fail[s] to properly take into account the purpose of the notice requirement.   That requirement

22  exists in order to allow a defendant to avoid liability for damages if the defendant corrects the

23  alleged wrongs within 30 days after notice, or indicates within that 30-day period that it will

24  correct those wrongs within a reasonable time.   [Citations.]   A dismissal with prejudice of a

25

26                                                          20

damages claim filed without the requisite notice is not required to satisfy this purpose.  Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements . . . . [¶] Because plaintiffs in this case alleged that they sent the required notice to [defendant] more than 30 days before they filed the third amended complaint and that [defendant] failed to correct the alleged wrongs, the trial court erred by sustaining the demurrer for failure to comply with the CLRA notice requirements." *Id*. at 1261.  In so holding, the court found it was unnecessary to determine if the plaintiffs had properly alleged compliance with the notice requirement in their original and first amended complaints. *Id*. at 1261 n. 13.

The Court finds the reasoning of *Morgan* to be persuasive.  Accordingly, the Court further finds that because Plaintiff alleges she sent the required notices to Defendants more than thirty days before she filed the FAC and that Defendants failed to rectify the alleged wrongs, Plaintiff's request for damages and restitution in the FAC was proper.  Defendants' motion to dismiss the CLRA cause of action is without merit and must therefore be denied.

**V. DISPOSITION**

Based on the foregoing, Defendants' motion to dismiss the FAC is granted in part and denied in part as to Defendants only.  Dismissal of the third cause of action for breach of express warranty is GRANTED with leave to amend; dismissal of all other causes of action is DENIED.

Plaintiff shall have leave to amend within thirty days of entry of this order.  Accordingly, Plaintiff's motion for leave to file a second amended complaint is hereby denied as MOOT.

IT IS SO ORDERED.

Dated:   August 1, 2013                          _____
                                                  SENIOR  DISTRICT  JUDGE